PEOPLE v ACKERMAN

Docket No. 228526. Submitted February 11, 2003, at Detroit. Decided July 8, 2003, at 9:05 A.M.

Gerald S. Ackerman was convicted by a jury in the St. Clair Circuit Court, Peter E. Deegan, J., of five counts of first-degree criminal sexual conduct, MCL 750.520b(1); two counts of child sexually abusive activity, MCL 750.145c(2); and three counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a), after he allegedly molested three girls under the age of thirteen during his tenure as a supervisor of Clear Choices, a community youth facility. The defendant appealed, raising a number of evidentiary issues, in addition to claims of prosecutorial misconduct and ineffective assistance of counsel.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in admitting evidence of the defendant's consensual sexual relationships with two young women who frequented Clear Choices, and in admitting evidence of acts of indecent exposure that took place at Clear Choices. Evidence of similar misconduct, including other instances of sexual misconduct, is logically relevant to show that the charged act occurred where the prior misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system. MRE 404(b)(1). Regarding the acts of indecent exposure, which involved the frequent exposure of the defendant's genitals to young girls at Clear Choices, this evidence was relevant to the prosecution's theory that the defendant engaged in a scheme, plan, or system of desensitizing girls to sexual misconduct in order to seduce them into sexual activity with him. The evidence of the defendant's sexual relationships with the two young women was similarly relevant and admissible, because although the women had reached the age of consent, they were still "youthful" and their experiences were sufficiently similar to those of the victims to be relevant as evidence of a common scheme, plan, or system. Moreover, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403.

2. The trial court did not abuse its discretion by admitting expert testimony regarding patterns of behavior exhibited by adult sex offenders in desensitizing child victims. The defendant's argument that this testimony was precluded by the Supreme Court's decision in *People v Peterson*, 450 Mich 349 (1995), is without merit because that decision did not address the admissibility of expert testimony concerning typical patterns of behavior by adult sex offenders; rather, *Peterson* addressed the circumstances under which an expert may testify regarding typical symptoms exhibited by child sexual abuse victims. The testimony was admissible under MRE 702, particularly where the testimony would aid the jurors, who likely lacked direct knowledge of, or experience with, the typical forms of conduct engaged in by adults who sexually abuse children.

3. The trial court did not abuse its discretion in allowing the defendant's ex-wife to briefly testify that she did not want to testify against the defendant and that she was concerned for her safety. On direct examination, the ex-wife's testimony corroborated that of one of the victims that the defendant had a pet name for his penis. The ex-wife's testimony on redirect examination that she did not want to testify and was afraid for her safety was relevant to rebutting the inference raised by the defense during cross-examination that the ex-wife wanted to incriminate the defendant because of animosity she bore toward the defendant as a result of their divorce.

4. The prosecution did not commit misconduct by asking the defendant whether he disputed specific points of other witnesses' testimony. Although a prosecutor may not ask a defendant to comment on the credibility of prosecution witnesses, the question in this case was whether the defendant had a different version of the facts. It is not improper for the prosecutor to ascertain which facts are in dispute.

5. The prosecution did not improperly argue a fact not in evidence by arguing that cunnilingus is an unusual act. A prosecutor is free to argue the evidence and any reasonable inference that may arise from the evidence. This argument related to the fact that all three complainants, as well as the two older teenagers, testified that the defendant engaged in cunnilingus with them, and therefore, there was a pattern to the defendant's sexual activity, because it was unlikely that each witness would fabricate a version of events that included cunnilingus.

6. The defendant was not denied a fair and impartial trial when the prosecution allegedly suggested that the defendant had acknowledged destroying photographs of the complainants. The

prosecutor's clarification that she was referring to pictures of one of the older teenagers, together with the defense's objection, the trial court's cautionary instruction that the evidence included only the sworn testimony and exhibits, and the defendant's own testimony that he did not take nude pictures of any of the complainants, negated any improper inference by the prosecution.

7. The prosecution did not improperly appeal to the juror's civic duty to convict by arguing that this case involved the exploitation of an entire community of children and that the Clear Choices facility was a place intended for children with troubled backgrounds. A review of the prosecution's comments as a whole and an evaluation of the comments in light of defense arguments reveal that the comments were reasonably related to the prosecution's theory that the defendant selected vulnerable children to molest, and were responsive to the defense's attack on the character of at least one of the victims. Moreover, a prosecutor may use emotional language during prosecutorial argument. The defendant was not denied a fair and impartial trial.

8. The defendant's argument that the cumulative effect of the alleged instances of prosecutorial misconduct requires reversal fails, because none of the alleged errors was prejudicial to the defendant and there are no errors that can aggregate to deny the defendant a fair trial. Similarly, the defendant's argument that he was denied the effective assistance of counsel because of counsel's failure to object to the instances of prosecutorial misconduct is without merit since the alleged misconduct was not prejudicial to the defendant, and counsel is not required to raise futile objections. Finally, the defendant was not denied the effective assistance of counsel by counsel's decision not to call a defense expert witness because the defendant failed to overcome the presumption that the decision was a matter of trial strategy.

9. The defendant's argument that pretrial publicity denied him a fair trial and that venue should have been changed is without merit because defense counsel did not move for a change of venue, did not attempt to renew a prior motion for a change of venue, and expressed satisfaction with the jury that heard the case.

10. The defendant's argument that the trial court was biased against the defendant because the counsel the defendant retained for his first trial was not appointed to represent him at the second trial is without merit. An indigent receiving counsel at public expense is not entitled to choose his attorney.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Peter R. George*, Prosecuting Attorney, and *Timothy K. Morris*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*) for the defendant on appeal.

Before: MARKEY, P.J., and SMOLENSKI and METER, JJ.

PER CURIAM. Defendant Gerald S. Ackerman appeals by right his convictions[1] for sexually abusing three girls under the age of thirteen. He was sentenced to concurrent terms of twenty-five to thirty-eight years imprisonment for four counts of first-degree criminal sexual conduct, MCL 750.520b(1); eighteen to thirty-six years for another count of first-degree criminal sexual conduct; seven to twenty years each for two counts of child sexually abusive activity, MCL 750.145c(2); and seven to fifteen years each for three counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a). We affirm.

Defendant first argues that the trial court abused its discretion by admitting evidence of defendant's consensual sexual relationships with two young women and evidence of acts of indecent exposure of which defendant was convicted. We conclude that the trial court did not abuse its discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). This Court must form more than a difference of opinion with the trial court before we may find that the trial court abused its discretion. *People v Hine*, 467 Mich 242,

---

[1] This is defendant's second trial. In defendant's first trial, a jury convicted him of nine counts of indecent exposure but could not agree on the charges involved in this appeal.

250; 650 NW2d 659 (2002). Indeed, this Court must find that the trial court's decision was so palpably and grossly contrary to fact and logic that it evidenced not the exercise of will but perversity of will, not the exercise of judgment but the defiance of it. *Id.* Under this standard, it is difficult to hold that a court abused its discretion on a close evidentiary question. *Id.*; *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

Defendant became the Mayor of the city of Port Huron in July 1997 and was the mayor at the time the charged crimes were committed. Defendant also was a supervisor at a community facility known as Clear Choices where youths could socialize, dance, and play games. The prosecution argued that the evidence of other acts was relevant to show defendant's system of selecting, desensitizing, and seducing victims. The trial court agreed that the evidence of indecent exposure was relevant "to the issues of desensitization of . . . victims and . . . how that relates in the overall scheme of things." With regard to evidence of defendant's consensual sexual activities with two young women who frequented Clear Choices, the trial court affirmed the ruling it made before defendant's first trial. The trial court stated:

> This Court finds that the evidence is offered for a proper purpose under Rule 404(b), and is relevant under Rule 402 as enforced through Rule 104(b)[.] [S]pecifically, the People may introduce testimony of the two witnesses whose alleged relationship with the Defendant began when they were each 17 years of age.
>
> This testimony about their alleged relationship with the Defendant would go towards showing a, a pattern of Defendant's behavior in grooming other alleged victims out of Clear Choices in the case for sexual relationships.

> However, I'm going to confine any of that testimony as to activities at the site of Clear Choices. I will not entertain any comparable type of sexual activity with these persons away from that facility because it's—that's one of the controlling considerations that the Court is looking at in making this ruling.

The trial court also found that the probative value of the proffered evidence was not substantially outweighed by the danger of unfair prejudice to defendant.

Under Michigan's rules of evidence, all logically relevant evidence is admissible at trial, except as otherwise prohibited by the state or federal constitutions or other court rules. MRE 401; MRE 402; *People v VanderVliet*, 444 Mich 52, 60-61; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994). To be relevant, the evidence must be material or probative of a fact of consequence to the action. *People v Mills*, 450 Mich 61, 67; 537 NW2d 909, mod and remanded 450 Mich 1212 (1995). To be material, the fact must be one "in issue" or within the "range of litigated matters in controversy." *Sabin, supra* at 57 (internal quotation marks and citations omitted). However, evidence of other crimes, wrongs, or acts may not be used to prove a person's character to show that the person possessed a propensity to commit the charged offenses. *Id.* at 56; MRE 404(b). In *VanderVliet, supra* at 74-75, our Supreme Court adopted from *Huddleston v United States*, 485 US 681, 691; 108 S Ct 1496; 99 L Ed 2d 771 (1988), the analytical framework trial courts must apply to the difficult task of discerning improper character evidence by utilizing "the safeguards already present in the Rules Of Evidence." Thus, other acts evidence may be admitted where:

(1) the evidence is offered for some purpose other than under a character-to-conduct theory, or a propensity theory, (2) the evidence is relevant to a fact of consequence at the trial, and (3) the trial court determines under MRE 403 that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. If requested, the trial court may provide a limiting instruction under MRE 105. *Sabin, supra* at 55-56.

In *Sabin, supra* at 62, our Supreme Court, in considering the "scheme, plan, or system" language in MRE 404(b)(1), stated that "evidence of other instances of sexual misconduct that establish a scheme, plan, or system may be material in the sense that the evidence proves that the charged act was committed." The Court clarified that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id.* at 63. Further, logical relevance "is based on the system, as shown through the similarities between the charged and uncharged acts, rather than on defendant's character, as shown by the uncharged act." *Id.* at n 10. Also, relevant similar acts are not limited to circumstances in which the charged and uncharged acts "are part of a single continuing conception or plot." *Id.* at 64. Our Supreme Court explained that the evidence of other acts " 'must indicate the existence of a plan rather than a series of similar spontaneous acts,' " *id.* at 65-66, quoting *People v Ewoldt*, 7 Cal 4th 380, 403; 27 Cal Rptr 2d 646; 867 P2d 757 (1994), but unlike evidence of other acts used to prove identity, " 'the plan

need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense.' " *Id.* at 65, quoting *Ewoldt, supra* at 403.

In this case, we conclude that the trial court did not abuse its discretion in admitting the testimony of several girls that defendant allowed his pants to fall down in front of them at Clear Choices, or that defendant otherwise exposed his genitals there, because this evidence was relevant to defendant's plan, scheme, or system as theorized by the prosecutor. All three complainants described incidents where defendant's overalls fell to the floor while they were present. The frequency with which this happened in front of girls at Clear Choices was relevant to show the improbability that defendant's overalls accidentally fell and exposed his genitals and supported an inference that defendant's actions were part of a system of desensitizing girls to sexual misconduct.

Evidence of defendant's consensual sexual acts with two young women presents a closer question of admissibility. Although the women had reached the age of consent, they were still teenagers who attended Clear Choices and could still reasonably be considered "youthful." We conclude that the women's status as youthful visitors at Clear Choices and their experiences are sufficiently similar to the victims' to support a conclusion under *Sabin, supra,* that defendant's sexual activity with them evidenced a common plan, scheme, or system of using his leadership role at Clear Choices to desensitize and seduce young women who frequented Clear Choices into sexual activity with him.

While the admissibility of this testimony may have been a close question, a trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *Hine, supra* at 250; *Sabin, supra* at 67. Similarly, we find no abuse of discretion in the trial court's determination that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. " 'Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury.' " *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001), quoting *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). The trial court is in the best position to gauge the effect of such testimony. *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002). Here the evidence of other acts had significant probative value in establishing a scheme, plan, or system for committing the charged offenses. Accordingly, we conclude that the trial court did not abuse its discretion by admitting this evidence.

Next, defendant argues that the trial court abused its discretion by admitting expert testimony from clinical social worker and psychotherapist Leo Niffeler, regarding patterns of adult sex offenders in desensitizing child victims. We disagree. A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but if the inquiry requires examination of the meaning of the Michigan Rules of Evidence, a question of law is presented, which we review de novo. *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002). Likewise, the trial court's decision to admit expert testimony is reviewed for an abuse of discretion. *People v Peterson*, 450

Mich 349, 363 n 8, 379; 537 NW2d 857 (1995), mod 450 Mich 1212 (1995); *People v Daoust*, 228 Mich App 1, 10; 577 NW2d 179 (1998). An abuse of discretion exists only if an unprejudiced person, considering the facts on which the trial court acted, would say that there is no justification or excuse for the trial court's decision. *People v Williams*, 240 Mich App 316, 320; 614 NW2d 647 (2000).

Niffeler, a psychotherapist with a master's degree in clinical social work who specializes in sexual abuse and trauma, testified that the majority of his professional work focused on sex offenders rather than on victims. He estimated that he spent twice as much time with offenders as he did with victims. Niffeler's testimony about child abuse accommodation syndrome and the behavior of victims of child sexual abuse is not at issue. However, Niffeler also testified that there is a difference between an offender who is a stranger and one who has a relationship with a victim. According to Niffeler, a "molestation scenario" generally unfolds over time and builds in intensity. Niffeler testified that part of the reason for this was that the sex offender needs to "desensitize" the child and have some assurance that the child will not disclose the abuse. He explained that it was not unusual for molestation to begin with apparently innocuous touching or hugging. Niffeler provided other examples of desensitizing a child such as including other children to give the sense "that this is an okay kind of a behavior," photographing the child and having the photographs become increasingly explicit, exposing the child to sexual items such as condoms or pornography, using sexually oriented language, and the offender exposing himself.

Defendant argues that *Peterson, supra,* only allows an expert in child sexual abuse to testify about typical symptoms exhibited by victims of child sexual abuse, not to address typical patterns of behavior exhibited by offenders. We find defendant's view of *Peterson* too restrictive. *Peterson* can only reasonably be read as discussing the circumstances under which expert testimony is admissible regarding the behavior of *children* who are victims of suspected sexual abuse. Our Supreme Court opined:

> An expert may testify *regarding typical symptoms of child sexual abuse* for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim *or* to rebut an attack on the victim's credibility. [*Peterson, supra* at 373 (emphasis added and emphasis in original).]

Contrary to defendant's argument, the emphasized language reflects that testimony about "symptoms" of child sexual abuse is limited. The language plainly pertains to any symptoms of abuse a child victim may exhibit. The *Peterson* Court simply did not address the admissibility of expert testimony concerning typical patterns of behaviors by adults who perpetrate child sexual abuse. Thus, *Peterson* is not directly controlling on the question of admission of the expert testimony at issue in this case.

Applying the general test for the admission of expert testimony, we conclude that the trial court did not abuse its discretion by permitting Niffeler to testify regarding common practices of child molesters. Before admitting expert testimony, "a trial court must find that the evidence is from a recognized discipline, relevant and helpful to the trier of fact, and presented by a qualified witness." *Daoust, supra* at 9-10. In

overruling defense counsel's objection to Niffeler's testimony, the trial court stated "he's explaining the basic format of that, and which in a generic sense is or is not applicable as the jury might find as would relate to any given case, but particular as it might then ultimately relate to this case." While articulated somewhat awkwardly, the trial court effectively ruled that Niffeler could testify about general patterns of behavior of child molesters. Niffeler was clearly qualified in a recognized discipline; consequently, the only remaining question is whether his testimony would be helpful to the jury. " 'The critical inquiry with regard to expert testimony is whether such testimony will aid the factfinder in making the ultimate decision in the case.' " *People v Coy*, 243 Mich App 283, 294-295; 620 NW2d 888 (2000), quoting *People v Smith*, 425 Mich 98, 105; 387 NW2d 814 (1986). In addressing this question, we apply common sense to determine whether an untrained layman could determine intelligently and to the best possible degree the issue involved without the aid of experts. *Smith, supra* at 106. We believe that most of our citizen-jurors lack direct knowledge of or experience with the typical forms of conduct engaged in by adults who sexually abuse children. Accordingly, the trial court reasonably concluded that testimony about the typical patterns of behavior exhibited by child sexual abuse offenders would aid the jury. MRE 702. Thus, we conclude the trial court did not abuse its discretion by admitting Niffeler's testimony.

Defendant also claims that the trial court abused its discretion by permitting his ex-wife, Janice Hall, to testify on redirect examination that she did not want to testify in this case because she was concerned for

her safety. Defense counsel objected but stated no basis for the objection. Therefore, this issue has not been preserved for appeal. MRE 103(a)(1); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Our review is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999); *Coy, supra* at 287. We will reverse only when plain error results in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of the defendant's innocence. *Carines, supra; Coy, supra* at 313.

Hall's testimony on direct examination that during her relationship with defendant he used a pet name for his penis corroborated the testimony of one of the victims that defendant told her "Henry" was a name he had for his penis. On cross-examination, defense counsel asked Hall how she became a witness in this case. She replied that she called the prosecutor's office shortly after defendant's arrest because she thought they should know defendant's history. Hall did not volunteer that defendant had a pet name for his penis. In fact, when the prosecutor first asked her about it, she did not initially recall the name defendant had used. Defense counsel asked if she had remembered the name in a dream and also asked if her divorce from defendant was bitter. When Hall answered "no," defense counsel asked her if she had a "happy divorce," to which she did not directly reply. Eventually defense counsel asked, "Go with non-bitter [divorce]?" Defense counsel's cross-examination of Hall was quite clearly aimed at impeaching her testimony about defendant's pet name for his penis by

implying that animosity motivated her testimony against defendant, her ex-husband.

On redirect examination, Hall testified that she was not told of the defendant's pet name for his penis by the prosecutor, a police officer, or another witness. The testimony at issue was elicited near the end of the prosecutor's redirect examination:

> *Q.* Do you have concerns about testifying in this case?
>
> *A.* Yes, I do.
>
> *Q.* Do you want to be here testifying in this case?
>
> *A.* No, I don't.
>
> *Q.* And what are you [sic] concerns?
>
> *A.* My concern's [sic] for the, um, safety of myself and safety of my—
>
> [*Defense counsel:*] Objection, your Honor.
>
> [*Prosecutor:*] Your Honor, it's been put forth that she had some motivation that she went to the Prosecutor's Office and that she's tried to somehow involve herself. I think whether or not she has concerns, she can, she can testify about that.
>
> [*The Court:*] Well, I'll let the answer stand where it is, but I'm going to ask you to move on.

This testimony was relevant to rebut the implication of defense counsel's cross-examination that Hall wanted to provide false testimony against defendant because of her animosity toward him. To the contrary, Hall claimed that she did not want to testify. In this regard, Hall explained why she did not want to testify and, by implication, that she did not testify about defendant's name for his penis in an effort to falsely incriminate him. Generally, all relevant evidence is admissible. MRE 402; *Aldrich, supra* at 114. Evidence is relevant "if it is helpful in throwing light on any material point." *Id.* at 114. Here, defense coun-

sel's cross-examination placed in issue whether Hall wanted to falsely incriminate defendant. The testimony on redirect examination tended to rebut the defense's insinuation. It was therefore relevant, and it is not obvious that its relevancy was substantially outweighed by the danger of unfair prejudice. MRE 403; *Aldrich, supra* at 114. Accordingly, no plain error occurred that warrants reversal. *Carines, supra* at 763, 774.

Defendant's effort to frame this issue as one of prosecutorial misconduct lacks merit. The prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Noble,* 238 Mich App 647, 660-661; 608 NW2d 123 (1999). Because the evidence at issue was relevant and responded to defense counsel's cross-examination, no basis exists to conclude that the prosecutor offered this evidence in bad faith.

Defendant also argues the prosecutor engaged in misconduct by; (1) conducting improper cross-examination, (2) improperly arguing facts not in evidence, (3) interjecting her personal belief in defendant's guilt, and (4) using improper "civic duty" arguments. We disagree. We review de novo claims of prosecutorial misconduct to determine whether defendant was denied a fair and impartial trial. *People v Pfaffle,* 246 Mich App 282, 288; 632 NW2d 162 (2001); *People v Watson,* 245 Mich App 572, 586; 629 NW2d 411 (2001). Because defendant did not preserve the bulk of his allegations of prosecutorial misconduct by objection below, our review regarding those claims is for plain error affecting substantial rights. *Pfaffle, supra; Watson, supra.* Reversal is warranted only when plain error resulted in the conviction of an

actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence. *Carines, supra* at 763; *People v Schutte,* 240 Mich App 713, 720; 613 NW2d 370 (2000). Thus, where a curative instruction could have alleviated any prejudicial effect we will not find error requiring reversal. *Watson, supra; Schutte, supra* at 721.

We find no merit in defendant's claim that the prosecutor engaged in misconduct by asking defendant whether he disputed specific points of other witnesses' testimony. Defense counsel did not object to this line of questioning. A prosecutor may not ask a defendant to comment on the credibility of prosecution witnesses because a defendant's opinion of their credibility is not probative. *People v Buckey,* 424 Mich 1, 17; 378 NW2d 432 (1985). Here, however, the prosecutor did not ask defendant to comment on the witnesses' credibility; she only asked whether the defendant had a different version of the facts. It is not improper for the prosecutor to attempt to ascertain which facts are in dispute. To the extent the questioning was improper, it does not merit reversal because there is no basis to conclude that it resulted in the conviction of an actually innocent defendant (or that it was a determinative factor in defendant's conviction at all), or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Schutte, supra* at 720. Moreover, a curative instruction could have cured any possible prejudice. *People v Knapp,* 244 Mich App 361, 385; 624 NW2d 227 (2001).

Defendant failed to adequately support other claims of alleged improper cross-examination by the pros-

ecutor. Error warranting reversal does not occur where a defendant fails to articulate how he was harmed. *Watson, supra* at 587-588. Moreover, the failure to cite any supporting legal authority constitutes abandonment of an issue. *Id.* at 587. Finally, if error occurred, a curative instruction would have cured any possible prejudice. *Knapp, supra* at 385.

Next, defendant claims that the prosecutor improperly argued that cunnilingus is an unusual act when there were no facts in evidence supporting such a claim. The trial court overruled defendant's objection to this argument with a comment to the jury that "the lawyers are allowed to argue logic from what they believe life experiences might or might not be." A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence. *People v Bahoda,* 448 Mich 261, 282; 531 NW2d 659 (1995); *Schutte, supra* at 721. We find that the prosecutor's argument related to the fact that all three complainants, as well as the two older teens, testified that defendant engaged in cunnilingus with them. The essence of the argument was that there was a pattern to defendant's sexual activity, i.e., the testimony of each of the complainants corroborated the others because it was unlikely that each would fabricate a version of events that included cunnilingus. Thus, the prosecutor's basic point was a rational argument based on the evidence and common experience. Accordingly, we conclude that the remarks at issue did not deprive defendant of a fair and impartial trial.

Defendant also argues that the prosecutor improperly suggested that defendant acknowledged destroy-

ing photographs of the complainants. Defense counsel objected to the prosecutor's comment mid-sentence. The prosecutor responded that she was talking about photographs of one of the older teens. The trial court allowed the prosecutor's argument to continue but cautioned the jury that the evidence in the case was the sworn testimony and exhibits admitted during the trial, and not the attorneys' statements. Thus, defense counsel's objection coupled with the prosecutor's response that she was referring to one of the adult teens should have clarified for the jury that the prosecutor was not asserting that defendant acknowledged destroying inappropriate photographs of the complainants. Moreover, in his testimony, defendant denied engaging in any sexual activity with the complainants and never suggested that he took nude photographs of them. Accordingly, we conclude that defendant failed to establish that this argument denied him a fair and impartial trial. *Watson, supra* at 586, 592.

Defendant next alleges that remarks the prosecutor made during her opening statement and closing argument were misleading and improperly appealed to the jurors' civic duty to convict. Defense counsel did not object to the remarks in question. The prosecutor referred to this case as involving "exploitation" and "the bold manipulation of an entire community of children," and that Clear Choices was intended "for children who came from broken homes, homes where substance abuse was a problem, homes where there wasn't necessarily two parents to raise the family." At the end of her rebuttal argument, the prosecutor said, again without objection:

> When you look at all the evidence on the whole, and when you apply your common sense, there's no doubt what happened here. There's no explanation that could possibly explain in a reasonable fashion the evidence that you've been presented with other than that these children were molested. For that I'm going to ask you to hold him responsible. Don't let him have the out of using children, picking these victims and then picking on their deficiencies in the hopes that you'd let him get away with it.
>
> Don't let him get away with it. Hold him responsible for what he did, and who he did it to, and how he did it. Find him guilty of all ten counts. Thank you.

A prosecutor may not advocate that jurors convict a defendant as part of their civic duty, *Bahoda, supra* at 282, but allegations of prosecutorial misconduct must be examined and evaluated in context, *Watson, supra* at 586. Furthermore, the prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *Schutte, supra* at 721. We must review the prosecutor's remarks in their full context. The following testimony was presented during defense counsel's direct examination of witnesses. An emergency-room nurse who took a history from one of the victims testified that the victim told her that after defendant put the tip of his penis in her that she told him to "get the fucking thing out." The same victim purportedly said she would suck defendant's "dick" for money or cigarettes. Another witness testified that the victim smoked outside the Clear Choices building. Yet another witness testified that the victim was a "discipline problem" at "Sober Saturdays" at Clear Choices and that a couple of Saturdays she was not allowed to come. Moreover, during closing argument, defense counsel referred to the victim

in question as having "a lot of problems in her life" and stated that Clear Choices "was a place for gang teenagers to go and for other troubled children, as well as neighborhood children to go." Defense counsel also referred to testimony that the victim had been thrown out of Clear Choices for her behavior. Defense counsel commented that when the victim told defendant to get the "fucking thing" out of her, this did not sound like a molested child, but "like a child who is bragging about her activity." Defense counsel later referred to the children as coming from difficult home situations and said that the victim in question was "standing out in a problem area, her behavior far worse than the gang teenagers in the group," that another victim had attention-deficit problems, and that the children had been exposed to conversations about sex.

We find that the prosecutor's characterization of Clear Choices was accurate and not misleading. That Clear Choices may have had programs for adults and may not have been limited in participation to people from any particular economic status is immaterial to the essence of the prosecutor's theory that defendant used his role at Clear Choices to gain access to vulnerable children for sexual exploitation. The prosecutor's remarks were reasonably related to the prosecution's theory that defendant selected vulnerable children to molest. A prosecutor may argue the evidence and all reasonable inferences arising from the evidence. *Bahoda, supra; People v Kelly*, 231 Mich App 627, 641; 588 NW2d 480 (1998). Further, the prosecutor's remarks were responsive to defense counsel's attack on the character of at least one of the victims. A prosecutor's remarks "must be considered in

light of defense arguments." *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997). Accordingly, we conclude that the prosecutor's remarks at issue were proper in light of the evidence and theories presented.

We further find that the prosecutor's remarks were not a call to convict as matter of civic duty, but rather, argument based on the evidence and reasonable inferences and in response to defense counsel's attack on the victims' character. Moreover, a prosecutor may use emotional language during closing argument and such argument is " 'an important weapon in counsel's forensic arsenal.' " *People v Ullah*, 216 Mich App 669, 678-679; 550 NW2d 568 (1996), quoting *People v Mischley*, 164 Mich App 478, 483; 417 NW2d 537 (1987). Accordingly, the prosecutor's remarks fell within the boundaries regarding the proper use of emotional language in prosecutorial argument, and did not deny defendant a fair trial, *Watson*, *supra* at 586, or meet the threshold for reversal based on unpreserved error, *Schutte*, *supra* at 720.

Defendant also argues that the cumulative effect of all the alleged instances of prosecutorial misconduct requires reversal. We disagree. The cumulative effect of several minor errors may warrant reversal where the individual errors would not. *Knapp*, *supra* at 388. However, in order to reverse on the basis of cumulative error, "the effect of the errors must [be] seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Id.* Here, we found no errors unfairly prejudicial to defendant. There are no errors that can aggregate to deny defendant a fair trial. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Similarly, defendant's argument that he was denied the effective assistance of counsel by counsel's failure to object to the alleged misconduct must also fail. To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability that the outcome of the proceeding would have been different but for trial counsel's errors. *People v Kevorkian,* 248 Mich App 373, 411; 639 NW2d 291 (2001). As discussed above, the unpreserved allegations of prosecutorial misconduct were not prejudicial to defendant. Moreover, counsel does not render ineffective assistance by failing to raise futile objections. *People v Hawkins,* 245 Mich App 439, 457; 628 NW2d 105 (2001).

Defendant also claims counsel was ineffective for not obtaining a defense expert witness. We disagree. Defendant has not met his heavy burden of overcoming the presumption that his trial counsel employed effective trial strategy. *People v Riley (After Remand),* 468 Mich 135, 140; 659 NW2d 611 (2003). Because no supplemental hearing was held on this issue, our review is limited to the existing record. *Id.* at 139. Counsel's decision whether to call a witness is presumed to be a strategic one for which this Court will not substitute its judgment. *People v Rockey,* 237 Mich App 74, 76; 601 NW2d 887 (1999). Defendant offers no proof that an expert witness would have testified favorably if called by the defense. Accordingly, defendant has not established the factual predicate for his claim. *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999). Thus, defendant has not established a reasonable probability that but for counsel's alleged

error the result of the proceedings would have been different. *Kevorkian, supra* at 411.

Next, defendant argues that pretrial publicity denied him a fair trial. Defense counsel did not move for a change of venue or attempt to "renew" his motion for a change of venue in connection with defendant's first trial. Moreover, defense counsel expressed satisfaction with the jury that heard the instant case. Thus, defendant waived his claim that venue should have been changed. *People v Clark,* 243 Mich App 424, 426; 622 NW2d 344 (2000).

Finally, defendant argues the trial court was biased because the counsel defendant retained for his first trial was not appointed to represent him at his second trial. Defendant did not preserve this issue by arguing it below. *People v Carter,* 462 Mich 206, 214; 612 NW2d 144 (2000). This issue lacks any merit. As an indigent receiving counsel at public expense, defendant was not entitled to choose his attorney. *People v Ginther,* 390 Mich 436, 441; 212 NW2d 922 (1973). Further, as discussed, defendant failed to overcome the presumption that counsel provided effective assistance. *Riley, supra* at 139-140. Likewise, defendant has not overcome the heavy presumption of judicial impartiality. *People v Wells,* 238 Mich App 383, 391; 605 NW2d 374 (1999). In sum, defendant failed to demonstrate the existence of plain error requiring reversal. *Carines, supra* at 763, 774.

We affirm.