# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MIGUEL ANGEL VIDANA,

       Defendant-Appellant.

UNPUBLISHED
December 16, 2014

No. 317387
Kent Circuit Court
LC No. 11-009009-FC

Before: MARKEY, P.J., and SAWYER and OWENS, JJ.

PER CURIAM.

Defendant was charged with open murder, MCL 750.316, and felony murder, MCL 750.316(1)(b), in the death of Bradley Memberto. A jury convicted defendant of second-degree murder, MCL 750.317, on each murder theory. Defendant was also convicted of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court vacated one of the murder convictions and sentenced defendant as a second-offense habitual offender, MCL 769.10, to consecutive sentences of 22 to 50 years for the remaining murder conviction, and 2 years for the felony-firearm conviction. Defendant appeals by right. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

We review de novo defendant's challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). We must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *Id.* The elements of the crime may be proved by circumstantial evidence and reasonable inferences arising therefrom. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

There was no dispute that Joe Leija shot and killed Memberto. The prosecutor contended that defendant assisted Leija. To obtain a conviction under an aiding and abetting theory, a prosecutor must prove three elements:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that

-1-

[the defendant] gave aid and encouragement. [*People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999).]

A defendant's mere presence, even with knowledge that an offense is about to be committed or is being committed, is not sufficient to establish that the defendant assisted in the commission of the crime. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). In determining whether the defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is immaterial if it had the effect of inducing the commission of the crime. *People v Moore*, 470 Mich 56, 71; 679 NW2d 41 (2004).

Selina Hernandez testified that on August 11, 2010, she was involved in setting up a drug deal between Memberto and defendant. Her involvement included contacting the two men on their cellular telephones. Detective Daniel Adams obtained the records for the telephone numbers that Selina told him belonged to Memberto and defendant, as well as the records for a telephone number that he learned belonged to Leija. The records showed numerous calls between defendant and Memberto and Selina's home telephone number. The records also showed several calls between defendant and Leija. According to Selina, defendant arrived at her house by himself. When she asked him for the marijuana, he replied that "his boy" had it. Several minutes later, Leija arrived. Selina testified that she generally would not have allowed Leija to enter her house, but she never had any problems previously with the Vidana brothers, and she felt comfortable with defendant. The drug transaction did not take place as usual: Selina was not given the marijuana upfront. Rather, Leija brought a sample of the marijuana with him, and then he left the house to get the rest of it. When Leija returned with a duffle bag, he pulled a gun from his waistband and told everybody to get on the ground. Angelo Hernandez, Selina's son, testified that, as Leija did this, defendant grabbed his head and pulled him down. According to Selina, after Leija shot Memberto, Leija and defendant ran from the house. Eight days later, defendant was found hiding in a crawl space in Texas. When defendant was found for the second time in Texas in May 2011, he offered to trade information about drug trafficking and murders in exchange for not being sent back to Michigan.

The evidence, when viewed in a light most favorable to the prosecution, shows more than defendant's mere presence at the scene of a murder. A rational trier of fact could infer that defendant and Leija were acting in concert on August 11, 2010, and that defendant performed an act that assisted the commission of the charged crimes and that he intended the commission of them when he grabbed Angelo and pulled his head down. Defendant's convictions are supported by sufficient evidence.[1]

## II. GREAT WEIGHT OF THE EVIDENCE

---

[1] Because defendant's convictions are supported by sufficient evidence, we reject defendant's argument that the trial court erred when it denied his motions for a directed verdict. The question whether a defendant is entitled to a directed verdict is subject to the same standards as the question whether a defendant's convictions are supported by sufficient evidence. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001).

Defendant argues that the verdict was against the great weight of the evidence because the prosecutor failed to prove all the elements of aiding and abetting. We review a trial court's decision on a motion for a new trial on the ground that the verdict was against the great weight of the evidence for an abuse of discretion. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes. *Id.*

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.* at 469. A verdict will be vacated only the when evidence does not reasonably support it but rather is more likely attributable to causes outside the record such as passion, prejudice, sympathy, or other extraneous influence. *Id*. Here, the evidence reasonably supports the verdict. As discussed already, based on defendant's conduct before he arrived at Selina's house, while he was in the house, and his flight to Texas, the jury could have inferred that defendant and Leija were acting in concert on August 11, 2010, and that defendant performed an act that assisted Leija in the commission of the charged crimes and that he intended their commission. A review of the evidence does not establish that the verdict was likely attributable to causes outside the record. *Id.* The trial court did not abuse its discretion denying defendant's motion for a new trial. *Lacalamita*, 286 Mich App at 469.

III. OTHER ACTS EVIDENCE

Defendant argues that the trial court abused its discretion when it allowed the prosecutor to present evidence regarding a 2005 double murder. An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).

Evidence of a defendant's other acts is admissible if three requirements are met: (1) the evidence is offered for a proper purpose, i.e., something other than propensity to act in character; (2) the evidence is relevant to an issue of fact that is of consequence at trial; and (3) under MRE 403, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009).

In this case, the trial court accepted the prosecution's argument that the evidence of the 2005 double murder was admissible under several proper purposes listed in MRE 404(b)(1). But even if the prosecution failed to identify the purpose that supports admissibility, reversal is not required. *People v Sabin (After Remand)*, 463 Mich 43, 60; 614 NW2d 888 (2000). "The prosecution's recitation of purposes at trial does not restrict appellate courts in reviewing a trial court's decision to admit the evidence." *Id*. Evidence is excludable under MRE 404b where its *only* relevance is to show the defendant's propensity to commit the conduct in question. *People v VanderVliet*, 444 Mich 52, 63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Stated otherwise, evidence under this rule is admissible where it is relevant to any non-propensity inference. *Id*. at 63-64. Relevant evidence "is evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)." *Sabin (After Remand)*, 463 Mich at 57. "A material fact is one that is 'in issue' in the sense that it is within the range of litigated matters in controversy." *Id.* (quotation omitted). "The relationship of the

-3-

elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *VanderVliet*, 444 Mich at 75.

We conclude that the evidence of the 2005 double murder under a theory to prove opportunity or preparation was not relevant because it was not material. The range of litigated matters did not include defendant's opportunity to commit the murder of Memberto or his preparation in committing the murder. *Sabin (After Remand)*, 463 Mich at 57.

Evidence of the 2005 double murder also was not relevant under a theory to prove defendant's scheme, plan, or system in doing an act. Evidence of a defendant's similar acts of misconduct is relevant to show that the charged act occurred where the uncharged conduct and the charged act are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system. *Id.* at 63. General similarity between the charged act and the uncharged conduct, by itself, is not sufficient to establish a common plan, scheme, or system. *Id.* at 64. There must not merely be a similarity in the results, but "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." *Id.* at 64-65 (quotation omitted). There are similarities between the 2005 double murder and Memberto's murder. The murders occurred during evening or night hours at drug houses. Defendant was present at the murders, although he was never the person who actually committed the murder. Still, these similarities do not have a concurrence of common features such that the 2005 double murder and the murder of Memberto can naturally be explained as individual manifestations of a general plan. *Id.*

The other acts evidence was also not relevant to prove identity because there was no dispute regarding that issue; so, it was not "within the range of litigated matters in controversy." *Sabin (After Remand)*, 463 Mich at 57. Moreover, other acts evidence is admissible to show identification through modus operandi if, in part, there is substantial evidence that the defendant committed the prior bad act, and there is some "special quality" of the bad act that tends to prove the defendant's identity. *People v Ho*, 231 Mich App 178, 186; 585 NW2d 357 (1998). There are no "special qualities" about the 2005 double murder that would tend to show identification.

Nevertheless, we conclude that the trial court did not abuse its discretion by admitting the other acts evidence because it was relevant to defendant's state of mind, or intent. The prosecution's theory of the case was that defendant aided and abetted Leija in committing the crimes. The prosecution was required to prove that defendant intended the commission of the crimes or had knowledge that Leija intended to commit them at the time that defendant gave aid and encouragement. The defense theory was that defendant was not an aider and abettor, that defendant was merely present and did not have the intent to kill or rob Memberto, and that he performed no act to assist and gave no encouragement to Leija in the commission of the crimes. The other acts evidence rebutted defendant's defense of "mere presence," or that it was mere happenstance that he was at the drug house at the time of the robbery and murder.

Although "mere presence" is insufficient to establish criminal liability as an aider and abettor, *Norris*, 236 Mich App at 419-420, assistance sufficient for criminal liability "includes the actual or constructive presence of an accessory, in preconcert with the principal, for the purpose of rendering assistance, if necessary." *People v Palmer*, 392 Mich 370, 378; 220 NW2d 393 (1974). See also *Moore*, 470 Mich at 63, quoting 21 Am Jur 2d, Criminal Law, § 206, p

273: "'An aider and abettor is one who is present at the crime scene and by word or deed gives active encouragement to the perpetrator of the crime, or by his conduct makes clear that he is ready to assist the perpetrator if such assistance is needed.'" So, a critical distinction in ascertaining "mere presence" from aiding and abetting is defendant's state of mind.

In ruling that the other acts evidence was admissible, the trial court disclaimed reliance on the doctrine of chances discussed in *People v Mardlin*, 487 Mich 609; 790 NW2d 607 (2010).[2] In that case, the defendant was charged with arson of a dwelling house, MCL 750.72. Our Supreme Court held that the trial court properly admitted evidence of other fires involving homes and vehicles the defendant owned or controlled. This Court had reversed the trial court's finding that the other fires lacked "special qualities or additional significant indices of similarity" to the charged offense. *Mardlin*, 487 Mich at 619-620. Our Supreme Court explained that admissibility of other acts evidence under MRE 404(b) under the theory of "the doctrine of chances 'varies with the issue for which it is offered.'" *Mardlin*, 487 Mich at 620, quoting *VanderVliet*, 444 Mich at 79 n 35. The Court explained that past cases made clear that theories of relevance such as plan, scheme, or system in doing an act, or *modus operandi* evidence to prove identity, required a higher degree of similarity and of the defendant's connection to the other acts to be admissible. *Id*. at 621. "Different theories of relevance require different degrees of similarity between past acts and the charged offense to warrant admission. Thus, the level of similarity required when *disproving innocent intent* is less than when proving modus operandi." *Mardlin*, 487 Mich at 622 (emphasis added; quotation omitted). Where the other acts evidence is offered to negate innocent intent, "the past events need *only* be of the same general category as the charged offense." *Id*. at 622-623 (emphasis in the original). Here, the fact that on a prior occasion, an associate of defendant robbed and killed at a drug house in defendant's presence is sufficiently similar to the facts of the present case to be relevant to negate defendant's claim of "innocent intent" or his "mere presence" defense. *Id.* at 624.

Similarly, the other acts evidence in this case was relevant to show the "absence of mistake or accident," MRE 404(b)(1). The absence of mistake or accident has logical relevance on the same basis as and is a subset of evidence that negates innocent intent. *Mardlin*, 487 Mich at 620. The Court in *VanderVliet*, 444 Mich at 80 n 37, quoting Wright & Graham, Federal Practice and Procedure, § 5247, pp 517-518, explained the relevance of such evidence. The relevance of evidence that shows the absence of mistake or accident rests on the notion of probability: "how likely is it that the defendant would have made the same mistake or have been involved in the same fortuitous act on more than one occasion." *Id.* "The justification for admitting evidence of mistake or accident is the same as for the other exceptions involving proof of the defendant's state of mind. When offered for this purpose, no inference to any conduct of the defendant is required . . . ." *Id.*

---

[2] We are not bound by the trial court's reasoning in finding the evidence relevant and admissible because this Court will not reverse a trial court when it reaches the correct result even if for a wrong reason. *People v McLaughlin*, 258 Mich App 635, 652 n 7; 672 NW2d 860 (2003).

Defendant also argues that evidence of the 2005 double murder should have been excluded under MRE 403. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. In applying MRE 403, "unfair prejudice" does not simply mean damaging because all relevant evidence presented by one party may be considered damaging to the opponent's case. *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010). Rather, evidence is unfairly prejudicial when it is marginally probative and might be given undue or preemptive weight by the jury. *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). Whether the evidence is unfairly prejudicial and substantially outweighs its probative value is a determination that is best made by the trial court "after its contemporaneous assessment of the presentation, credibility, and effect of testimony." *VanderVliet*, 444 Mich at 81.

In this case, the trial court did not abuse its discretion by ruling that the probative value of the other acts evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. As discussed, the evidence was highly probative of defendant's state of mind to negate claims of innocent intent and to show the absence of mistake or accident. Further, the danger of unfair prejudice from the evidence is low because the strength and relevance of the evidence does not arise on the basis of character to conduct. *VanderVliet*, 444 Mich at 80 n 37. Moreover, the trial court also instructed the jury that other acts evidence could be considered for limited purposes, including whether "defendant acted purposefully–that is, not by accident or mistake . . . ." The trial court specifically instructed the jury it could not draw an impermissible inference from the evidence that "defendant is a bad person or that he is likely to commit crimes." A trial court's limiting instruction will generally enable the jury to sort out the evidence and consider it only for its proper purpose. *Mardlin*, 487 Mich at 629. Indeed, jurors are presumed to follow the trial court's instructions. *Unger*, 278 Mich App at 235, 237. The trial court did not abuse its discretion in admitting the other acts evidence. *Id*. at 216.

## IV. OTHER EVIDENTIARY ISSUES

First, defendant argues that Ernesto Tamayo's testimony about his arrest on August 19, 2010, in Fort Worth, Texas, should have been excluded. We review the trial court's decision to admit evidence of defendant's arrest for an abuse of discretion. *Unger*, 278 Mich App at 216.

Evidence of flight is relevant and admissible because it may indicate a consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). The term "flight" includes such actions as fleeing the scene of a crime, leaving the jurisdiction, attempting to elude the police, resisting arrest, or attempting to escape custody. *Id.* Defendant was found in Texas eight days after the murder of Memberto. Tamayo and other law enforcement officers found defendant hiding in a crawl space at 1413 Terrell. He refused to leave the crawl space until Tamayo used pepper spray. This evidence shows flight by defendant, which is relevant because it may indicate consciousness of guilt. The evidence was not rendered irrelevant simply because Tamayo believed defendant was wanted for a "sexual" crime. The evidence of defendant's flight was relevant because it was what defendant did immediately after Memberto's murder; it matters not what was in Officer Tamayo's mind. The facts are that in the eight days after the murder defendant fled the state and hid in a crawl space when police came looking for him. This conduct allows a reasonable inference of consciousness of guilt related to the murder.

-6-

We find no merit to defendant's argument that the evidence of his first arrest was unfairly prejudicial and should have been excluded under MRE 403. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. *Crawford*, 458 Mich at 398. The evidence of defendant's first arrest was more than marginally probative: it may have shown consciousness of guilt. Moreover, because the trial court instructed the jury as to how it could use the evidence of defendant's flight, there was no danger that the evidence would be given undue or preemptive weight by the jury. *Mardlin*, 487 Mich at 629. A jury is presumed to follow its instructions. *Unger*, 278 Mich App at 235, 237. The trial court did not abuse its discretion in admitting Tamayo's testimony about defendant's first arrest. *Id*. at 216.

Defendant argues that his statement to Tamayo after his second arrest on May 31, 2011, that he was a member of a drug cartel should have been excluded under MRE 404(b). This claim of error is unpreserved because defendant never objected to Tamayo's testimony regarding this statement. See *Steele*, 283 Mich App at 482. We review unpreserved claims of evidentiary error for plain error affecting the defendant's substantial rights. *Unger*, 278 Mich App at 235.

"MRE 404(b) does not preclude evidence of criminal actions accompanying an escape because these actions are part of the res gestae of the incident." *People v McGhee*, 268 Mich App 600, 613; 709 NW2d 595 (2005), citing *Coleman*, 210 Mich App at 5. "'Res gestae are the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character.'" *People v Lytal*, 119 Mich App 562, 572; 326 NW2d 559 (1982), quoting *People v Kayne*, 268 Mich 186, 191; 255 NW 758 (1934). Defendant's statement to Tamayo that he was a member of a Mexican drug cartel was part of the res gestae of defendant's flight. Defendant fled the state of Michigan after Memberto's murder, and he made the statement to Tamayo several months later to avoid being placed in the custody of Michigan law enforcement officials. There was no plain error in the admission of defendant's statement to Tamayo. *Unger*, 278 Mich App at 235.

We also find no merit to defendant's argument that evidence of the statement should have been excluded under MRE 403. The evidence was more than marginally probative. Because defendant did not want to be returned to Michigan, it may have indicated consciousness of guilt. In addition, because the only evidence of the statement was Tamayo's testimony about his attempts to arrest defendant, and because the trial court instructed the jury on how to use evidence of defendant's flight, there was no danger that the evidence would be given undue or preemptive weight by the jury. *Mardlin*, 487 Mich at 629; *Unger*, 278 Mich App at 235, 237.

Next, defendant argues that the trial court erred when it allowed Adams to testify about the "Penlink" report, which showed the telephone calls between Selina, defendant, Memberto, and Leija on August 11, 2010. We review the trial court's decision to admit Adams's testimony regarding the "Penlink" report for an abuse of discretion. *Unger*, 278 Mich App at 216.

"'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "A 'declarant' is a person who makes a statement." MRE 801(b). "A statement is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an

assertion." MRE 801(a). Hearsay is not admissible unless an exception applies. MRE 802. We assume for purposes of this claim that the Penlink report was inadmissible hearsay.[3]

The erroneous admission of evidence is generally nonconstitutional trial error. *People v Whittaker*, 465 Mich 422, 426; 635 NW2d 687 (2001). Such "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). After reviewing the whole record apart from the Penlink report, we conclude that its admission was not outcome determinative.

Selina's testimony showed contact between her and Memberto and between Selina and defendant before the drug transaction. Selina testified that she arranged for a drug transaction between Memberto and defendant and that she contacted Memberto and defendant throughout the day on their cellular telephones. Adams's testimony regarding the phone records and the Penlink report was cumulative of Selina's testimony. Although the telephone calls between Leija and defendant supported an inference that defendant and Leija were acting together in the drug transaction, this inference was also supported by testimony regarding what happened inside Selina's house. Selina testified that when she asked defendant for the marijuana, he said that "his boy" had it. The testimony showed that minutes later, Leija walked into the house, and he showed Memberto a sample of the marijuana. Thus, based on the untainted evidence, it does not affirmatively appear that it is more probable than not that any error by the trial court in admitting Adams's testimony regarding the Penlink report was outcome determinative. *Lukity*, 460 Mich at 495-496.

## V. PROSECUTORIAL MISCONDUCT

Defendant argues that various acts of misconduct by the prosecutor denied him fair trial. Defendant alleges the prosecutor improperly elicited Angelo's fear of retribution, improperly argued that Angelo did the right thing by testifying, improperly invoked juror sympathy for the victim, argued facts not in evidence, and misstated the law. We conclude that none of these allegations of misconduct, either singularly or in combination, denied defendant a fair trial.

A defendant must contemporaneously object and request a curative instruction to preserve a claim of prosecutorial misconduct. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Except for the prosecutor's closing argument that the jury, by its verdict, could show that Angelo did the right thing by testifying, defendant's claims of prosecutorial

---

[3] We acknowledge that we used testimony from Adams about the Penlink report to reach the conclusions that defendant's convictions are supported by sufficient evidence and that the verdict was not against the great weight of the evidence. In determining whether a conviction is supported by sufficient evidence, a court must consider all the evidence presented, even evidence that was erroneously admitted. *McDaniel v Brown*, 558 US 120, 130-131; 130 S Ct 665; 175 L Ed 2d 582 (2010). We have also found no authority that a different rule applies to erroneously admitted evidence on a claim the jury's verdict was against the great weight of the evidence.

misconduct are unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). In general, claims of prosecutorial misconduct are reviewed on a case-by-case basis, considering the prosecutor's remarks in context to determine if the defendant received a fair and impartial trial. *Id*.; *Bennett*, 290 Mich App at 475.

With respect to the prosecutor's comments and questions regarding Angelo's fear on the day of the offense, which he continued to experience, we note it was defense counsel on cross-examination that first elicited this information. The prosecutor on redirect examination further explored Angelo's testimony and elicited that Angelo did not want to testify in this case. Clearly, defense counsel opened the door to the prosecutor's redirect examination. See *People v Benton*, 294 Mich App 191, 200-201; 817 NW2d 599 (2011). A prosecutor's good-faith effort to elicit evidence does not constitute misconduct. *Ackerman*, 257 Mich App at 448. Moreover, Angelo's fear and the fact that he was a reluctant witness were relevant to his credibility. The credibility of witnesses is always relevant. *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995). The prosecutor's eliciting evidence of Angelo's fear was not misconduct equating to plain error affecting defendant's substantial rights. *Ackerman*, 257 Mich App at 448.

Defendant also contends that the prosecutor improperly argued Angelo's fear in his closing summation by saying that the jury by its verdict should show that he "did not the right thing" by testifying. Defense counsel immediately objected, stating that the jury's "verdict is not meant to show somebody something or to prove something to the public or anybody else." The trial court sustained the defense objection. No further curative instruction was requested or given, but the trial court gave standard instructions to the jury that it had to decide defendant's guilt only on the admitted evidence and that the lawyers' statements were not evidence. The jury was also instructed that it must not let sympathy or prejudice influence its decision and that it could only find defendant guilty if the prosecutor proved each element of the crimes beyond a reasonable doubt. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235. These remarks, in context, did not deny defendant a fair trial.

Defendant also asserts that the prosecutor improperly argued Tamayo's testimony that defendant stated he was a member of a Mexican drug cartel. Because this evidence was properly admitted at trial, the prosecutor was "free to argue the evidence and all reasonable inferences from the evidence as it relates to [his] theory of the case." *Id*. at 236. The remarks, in context, did not deny defendant a fair trial. *Bennett*, 290 Mich App at 475.

Next, defendant argues that the prosecutor misstated the law when he told the jury that the only thing the prosecution needed to prove was that defendant assisted Leija in some way. In context, the prosecutor also stated that all he needed to demonstrate was "that Joel Leija committed a murder and the defendant aided or assisted him in some way. That's all I have to demonstrate; that he aided and assisted in some way."

"A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). But where a jury is correctly instructed on the law, a prosecutor's erroneous statement regarding the law may be cured. *Id*. Apparently, because it was not disputed that Leija committed the murder,

the prosecutor shortened his argument as to the elements of the crime: he focused on a critical disputed element with respect to aiding and abetting. Still, the prosecutor omitted that he needed to prove that defendant intended that crimes be committed or had knowledge that Leija intended to commit them when he gave the aid or assistance. Nevertheless, because the trial court correctly instructed the jury on the elements of aiding and abetting, the prosecutor's misstatement of the law was harmless. *Id*. at 258-259; see also *Unger*, 278 Mich App at 235.

Defendant also asserts that the prosecutor argued facts not in evidence when he stated that defendant was hiding in Texas because he knew that he had done something wrong. In his closing argument, the prosecutor suggested that evidence of defendant's flight and hiding after the murder indicated that defendant had a guilty conscience or a guilty mind. Because evidence of defendant's flight after the offense was properly admitted at trial, the prosecutor was "free to argue the evidence and all reasonable inferences from the evidence as it relates to [his] theory of the case." *Unger*, 278 Mich App at 236. These remarks were not improper and in context did not deny defendant a fair trial. *Bennett*, 290 Mich App at 475.

Next, defendant argues that the prosecutor improperly appealed to sympathy when he told the jury that Memberto had a wife and a family and that his life was just as valuable as the life of a juror or the prosecutor. It is improper for a prosecutor to encourage the jury to base its verdict on sympathy for the victim. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). But in this case, the prosecutor's remarks, in context, were made after highlighting the fact that the evidence showed that Memberto was not a stellar citizen because he was a drug dealer. The argument was intended to counter any prejudice the jury might harbor against Memberto, not an obvious appeal to render its verdict on the basis of sympathy. Prosecutors need not limit their arguments to the blandest terms possible. *Id*. Because prosecutors are accorded wide latitude in arguing their case, *Unger*, 278 Mich App at 236, we conclude these remarks, in context, did not deny defendant a fair trial, *Bennett*, 290 Mich App at 475.[4]

Finally, defendant argues that the cumulative effect of the prosecutor's misconduct denied him a fair trial. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek,* 274 Mich App 58, 106; 732 NW2d 546 (2007). Only actual errors are aggregated. *People v Rice (On Remand)*, 235 Mich App 429; 597 NW2d 843 (1999). Our review of the record reveals no misconduct that would not have been cured by the trial court's instructions. *Unger*, 278 Mich App at 235. So, there is no cumulative effect from misconduct that denied defendant a fair trial. *Ackerman*, 257 Mich App at 454.

## VI. SPECIAL JURY INSTRUCTION

---

[4] It was also not an improper appeal to sympathy for the prosecutor, as the representative of the State and the victim at trial, to request a guilty verdict on the basis of the evidence.

Defendant next argues that the trial court did not properly respond to the jury's note expressing concern for the safety of the jurors. The trial court responded with an instruction designed to ease the jury's concerns that also included the following:

> You have taken an oath to justly decide the questions submitted to you and have sworn to render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the Court. Any thought of repercussions should play no part in your deliberations.

Both the prosecutor and defense counsel stated that they agreed with the trial court's instruction.

Defendant argues that the trial court should have inquired how widespread the jurors' fear was, how strong it was, and whether the jurors thought their fear would interfere with deliberations. But because defense counsel approved the instruction that the trial court gave in response to the jury's note, defendant has waived any issue regarding the instruction or the trial court's response. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Waiver extinguishes any error. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

We affirm.

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Donald S. Owens

-11-