# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

KENNETH LAMAR WILLIAMS,

       Defendant-Appellant.

UNPUBLISHED
May 12, 2015

No. 319595
Wayne Circuit Court
LC No. 13-001820-FC

Before: RIORDAN, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of two counts of armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, possession of less than 25 grams of heroin, MCL 333.7403(2)(a)(v), third-degree fleeing and eluding, MCL 257.602a(3)(a), and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. He was sentenced, as a third habitual offender,[1] MCL 769.11, to 18 to 40 years' imprisonment for each armed robbery conviction, 3 to 10 years' imprisonment for his felon in possession of a firearm conviction, 3 to 8 years' imprisonment for his possession of less than 25 grams of heroin conviction, 3 to 10 years' imprisonment for his third-degree fleeing and eluding conviction, and 5 years' imprisonment for his felony-firearm, second offense, conviction. We affirm.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant first argues that defense counsel provided ineffective assistance by failing to present *any* defense and by failing to present expert witness testimony regarding eyewitness identification. We disagree.

---

[1] Based on the judgment of sentence and sentencing transcript, it appears that defendant was only sentenced as a third habitual offender with regard to defendant's felon in possession of a firearm, possession of less than 25 grams of heroin, and third-degree fleeing and eluding convictions.

Because defendant did not move in the trial court for a new trial or a *Ginther*[2] hearing, this issue is not preserved for appeal. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). When a defendant fails to preserve his or her claim of ineffective assistance of counsel, this Court's review of the issue is limited to errors apparent from the trial court record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.*, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Additionally, "[a] defendant has waived the issue if the record on appeal does not support the defendant's assignments of error." *Id.*

The right to effective assistance of counsel during a criminal trial is guaranteed by the United States and Michigan constitutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Defendant bears a heavy burden of proving ineffective assistance of counsel because there is a strong presumption that defense counsel provided adequate representation. *Id.* at 670. Defendant also carries the burden of establishing the factual basis of his claim, and

> "[t]o the extent that [a defendant's] ineffective assistance claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for new trial which evidentially supports his claim and which excludes hypotheses consistent with the view that his trial lawyer represented him adequately." [*People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), quoting *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).]

This Court may not substitute its own judgment for that of defense counsel or second-guess defense counsel on matters of trial strategy, as defense counsel has great discretion with respect to the trial tactics that he employs while trying a case. *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994); *Payne*, 285 Mich App at 190.

In order to prove that defense counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " i.e., that counsel's conduct was outside the scope of professionally competent assistance under the circumstances, and (2) defendant was prejudiced, i.e., that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Vaughn*, 491 Mich at 669-671 (quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984)). "[D]efendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

First, defendant argues that "[d]efense [c]ounsel failed to present *any defense* when there was a clear defense to present." (Emphasis added.) Historically, the core of the Sixth

---

[2] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

Amendment right to effective assistance of counsel has been "the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Kansas v Ventris*, 556 US 586, 590; 129 S Ct 1841; 173 L Ed 2d 801 (2009) (internal quotation marks and citation omitted). However, defendant inaccurately asserts that defense counsel failed to present any defense. Although defense counsel did not present any defense witnesses or additional evidence after the prosecution concluded its case, defense counsel stated the following before the prosecution provided its closing argument with regard to defendant:

> The other thing I believe everyone agrees, [sic] it's already been placed on the record. That is, that the stolen credit cards and such were used.

> I believe there may be a bank record that is going to be introduced. That's the only thing that I want the Court to consider that might come in, but you already heard it on the record. That's the only other thing for my defense that I want you to consider.

It is apparent that defense counsel was referring to Audrey Russman's testimony that someone used two of the debit cards, and attempted to use another debit card, that were in her wallet in the hours after the incident occurred. Accordingly, it appears that defense counsel was implicitly arguing that defendant was not guilty of the crime because someone used the debit cards despite the fact that defendant was apprehended shortly after the robbery occurred, Russman's wallet was not found on defendant, Officer Andrew Shepherd, Jr., never saw an object thrown out of the Malibu as he pursued the vehicle, and Russman's wallet was never returned to her.

However, even if defense counsel was not advancing that argument, counsel stated the following as his closing argument:

> Your Honor, we take concern with the original identification in this matter. Only one, Ms. [Carly] Sharp[,] was the one that says door two to five [sic]. Second, she was able to identify my client.

> Now there is now common practice to do what's called a street elimination. I do find it to be outrageously suggestive, and the [c]ourt can understand those reasons. To see a person surrounded by police cars, lights, handcuffs, and I believe that's where the identification continued, it continued from.

> Our position all along has been that there was a third person inside of this vehicle. That third person was the one who was using these credit cards after, and it's illogical to think that someone would just find these credit car[d]s[] somewhere and then in short order start using the[m] somewhere else.

> That to me suggests that the officer who followed this car, and after it [was] wrecked, was not able to see exactly what he saw. And that suggests to me that he does not know who got out of that car, who was driving it, who was doing anything along those lines.

-3-

> We do not deny the narcotics in my client's possession. Our position has been that he was in fact there, merely present.
>
> Yes, he did have some heroin on his person, but he was not part of this robbery. And I ask you to focus please on the identification at the beginning, all the suggestiveness that followed, and then, your Honor, look to where this weapon was ultimately found. At the end of the day[,] it was not near my client or where he was at.
>
> Your Honor, I do not believe that the prosecution has met their burden, and I ask that he be found not guilty of everything except the drug charge.

Given his argument, it is evident that defense counsel advanced a defense regarding the validity or credibility of the victims' identifications of defendant; presented a defense theory that a third person was in the vehicle and responsible for the crime, especially in light of the fact that the debit cards were used after the incident; and challenged the allegations related to defendant's possession of a weapon and involvement in the armed robbery based on the fact that the gun was not recovered near the location where defendant was apprehended. This conclusion is further supported by defense counsel's cross-examination of Sharp, which included questions regarding her opportunity to view defendant during the incident, the circumstances of her subsequent identifications of defendant, and whether Sharp ever believed that there was more than one person inside the Malibu. Thus, because it is apparent that defense counsel did not fail to present *any* defense, defendant's claim on that basis has no merit.

Additionally, defendant impliedly argues that defense counsel was ineffective by failing to present an expert on the unreliability of eyewitness identification and, therefore, failing to present a defense based on the fallibility of Sharp's and Russman's identifications of defendant. We disagree.

"Counsel's decision whether to call a witness is presumed to be a strategic one for which this Court will not substitute its judgment." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Likewise, counsel's decision regarding whether to retain an expert witness is a matter of trial strategy. *Payne*, 285 Mich App at 190. "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id*. (internal quotation marks and citation omitted). A defendant must establish the factual predicate of his claim, and a defendant has failed to establish this factual predicate when he "offers no proof that an expert witness would have testified favorably if called by the defense." *Ackerman*, 257 Mich App at 455. If he fails to establish this factual predicate, he has not established that there was a reasonable probability that the outcome of the proceeding would have been different but for defense counsel's error. *Id*. at 455-456.

On appeal, defendant provides an extensive discussion of empirical research, and court cases discussing such research, concerning the reliability of eyewitness identification, the manner in which juries are influenced by eyewitness identification, and the effect of expert testimony related to eyewitness identification on jury verdicts. However, defendant offers no affidavits or other proof demonstrating that an expert witness would have testified in his favor in this case. Accordingly, it appears that defendant has not established the factual predicate of his

claim. *Id*. at 455. Moreover, there is no indication that defense counsel's failure to present an expert on eyewitness identification deprived defendant of a substantial defense. *Payne*, 285 Mich App at 190. As discussed above, defense counsel extensively cross-examined Sharp regarding her identification of defendant and argued during his closing argument that the procedures used by the police were "outrageously suggestive" and influenced the victims' subsequent identifications of defendant. Additionally, even though defense counsel did not cross-examine Russman, the testimony elicited by the cross-examination of Russman by Damond Ward's attorney provided additional evidence that had the potential to undermine the victims' identifications of defendant based on the lighting conditions in the alley, the stressful circumstances of the incident, and the suggestive nature of the street elimination procedure.

Further, defendant has failed to overcome the presumption that defense counsel's failure to call an expert witness was a reasonable trial strategy. *Id*. This Court previously stated the following regarding a defense attorney's failure to call an expert witness under similar circumstances:

> Defendant also argues that trial counsel provided ineffective assistance by failing to present expert psychological testimony about how the circumstances of the incident could have impaired McGinnis' perception, memory, and ability to recognize the shooter. Trial counsel's conduct in this regard is presumed to be a permissible exercise of trial strategy. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). Defendant has not overcome that presumption. Throughout his cross-examination of McGinnis, trial counsel elicited apparent discrepancies and arguable bases for regarding McGinnis' identification of defendant as the shooter to be suspect. *Trial counsel may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate.* [*People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999) (emphasis added).]

Additionally, with regard to expert testimony, the Michigan Supreme Court has stated, "[Q]uestions of eyewitness identification, fading memories, witnesses' body language, and the like involve obvious human behavior from which jurors can make commonsense credibility determinations." *People v Kowalski*, 492 Mich 106, 143; 821 NW2d 14 (2012) (internal quotation marks and citation omitted). Because defendant's trial was a bench trial, defense counsel may have reasonably believed that the trial court was very familiar with the fact that eyewitness identification can be unreliable and, as a result, concluded that expert testimony on the subject was unnecessary and may have the undesired effect of frustrating the judge. Thus, under the first prong of the test, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness. *Vaughn*, 491 Mich at 669.

Moreover, even if defense counsel did err in failing to present an expert witness, there is not a reasonable probability that his performance prejudiced defendant. *Id*. at 669, 671. Considering Sharp's and Russman's opportunity to view defendant's face, body, and clothing in a lit area, Sharp's and Russman's identifications of defendant during the street elimination, Sharp's identification of defendant at a live lineup, Sharp's and Russman's identifications of defendant at trial, Shepherd's continuous pursuit of the Malibu matching the description

provided by Sharp and Russman, and Shepherd's uninterrupted pursuit of defendant on foot after he exited the Malibu, it is unlikely that expert testimony regarding the unreliability of eyewitness identification would have affected the outcome of the trial, despite the trial court's acquittal of Ward. *Id.* at 671. Additionally, because defendant was not deprived of a substantial defense regarding the unreliability of the victims' identification of defendant, he has failed to establish that the result of the trial was fundamentally unfair or unreliable. *Lockett*, 295 Mich App at 187. Therefore, especially in light of the strong presumption that defense counsel provided adequate representation, *Vaughn*, 491 Mich at 60, defendant has failed to demonstrate that defense counsel's failure to present an eyewitness identification expert constituted ineffective assistance of counsel.

## II. IMPOSITION OF COURT COSTS

Second, defendant argues that the trial court erroneously imposed court costs in his case. We disagree.

Defendant did not object to the trial court's assessment of court costs. If a defendant fails to object when a trial court orders him to pay costs and attorney fees, this Court reviews "the trial court's imposition of court costs for plain error." *People v Konopka*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 319913); slip op at 6. To demonstrate such an error, the defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

After imposing defendant's sentences, the trial court assessed the following fees: "$340.00 state cost, $130.00 crime victim assessment fee, $600.00 court cost. No attorney fees." Defendant argues that the trial court erred in imposing court costs because, under *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), MCL 769.1k did not authorize the imposition of court costs in his case.

In relevant part, MCL 769.1k previously provided the following:

(1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred pursuant to statute or sentencing is delayed pursuant to statute:

(a) The court shall impose the minimum state costs as set forth in section 1j of this chapter.

(b) The court may impose any or all of the following:

(*i*) Any fine.

-6-

(*ii*) Any cost in addition to the minimum state cost set forth in subdivision (a).

(*iii*) The expenses of providing legal assistance to the defendant.

(*iv*) Any assessment authorized by law.

(*v*) Reimbursement under section 1f of this chapter.

In interpreting the former version of MCL 769.1k, the Michigan Supreme Court concluded, "When read 'reasonably and in context,' it is evident to us that MCL 769.1k(1)(b)(*ii*) does not provide courts with the independent authority to impose 'any cost.' Rather, MCL 769.1k(1)(b)(*ii*) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute." *Cunningham*, 496 Mich at 154. Accordingly, the Court held:

> MCL 769.1k(1)(b)(*ii*) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute. In other words, we find that MCL 769.1k(1)(b)(*ii*) seeks comprehensively to incorporate by reference the full realm of statutory costs available to Michigan courts in sentencing defendants, so that the Legislature need not compendiously list each such cost in MCL 769.1k. Our understanding of MCL 769.1k(1)(b)(ii ), we believe, accords respect to its language, to the language of other cost provisions within MCL 769.1k, and to the language of other statutes enacted by the Legislature conferring upon courts the authority to impose specific costs for certain offenses. [*Id*. at 158-159.]

After *Cunningham* was decided, the Legislature passed 2014 PA 352, which amended MCL 769.1k, effective October 17, 2014. The enacting sections provided that the amendatory act had retroactive and prospective application and that the amendments were in response to the Supreme Court's opinion in *Cunningham*:

> Enacting section 1. This amendatory act applies to all fines, costs, and assessments ordered or assessed under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before June 18, 2014, and after the effective date of this amendatory act.

> Enacting section 2. This amendatory act is a curative measure that addresses the authority of courts to impose costs under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before the issuance of the supreme court opinion in People v Cunningham, 496 Mich 145 (2014). [2014 PA 352.]

The amended version of MCL 769.1k provides, in relevant part:

> (1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the

following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred pursuant to statute or sentencing is delayed pursuant to statute:

* * *

(b) The court may impose any or all of the following:

> (*i*) Any fine authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

> (*ii*) Any cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

> (*iii*) Until 36 months after the date the amendatory act that added subsection (7) is enacted into law, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

> > (A) Salaries and benefits for relevant court personnel.

> > (B) Goods and services necessary for the operation of the court.

> > (C) Necessary expenses for the operation and maintenance of court buildings and facilities.

> (*iv*) The expenses of providing legal assistance to the defendant.

> (*v*) Any assessment authorized by law.

> (*vi*) Reimbursement under section 1f of this chapter.

The amended version of the statute applies in the instant case because the amendment applies to all fines, costs, and assessments that were imposed before June 18, 2014, and after the effective date of the amendatory act, i.e., October 17, 2014, 2014 PA 352, and defendant's court costs were imposed on November 13, 2013. Moreover, "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Konopka*, ___ Mich App at ___; slip op at 6 (internal quotation marks and citations omitted). Therefore, because the amendment has retroactive effect and defendant's case was still on appeal when the Legislature amended MCL 769.1k, this Court must apply the amended version of MCL 769.1k to this case.

In *Konopka*, ___ Mich App at ___; slip op at 6-8, this Court recently considered the trial court's authority to impose court costs in light of the recent amendments to MCL 769.1k and the Court's previous ruling in *Cunningham*. Although this Court recognized that, under *Cunningham*, MCL 769.1k(1)(b)(*ii*) only allowed courts to impose court costs that were

separately authorized by statute, it concluded that the amended version of "MCL 769.1k(b)(*iii*) authorizes the imposition of costs independently of the statute for the sentencing offense." *Id*. at ___; slip op at 6-7. Thus, a trial court may impose court costs even if the statute for the sentencing offense does not authorize such costs. *Id*. at ___; slip op at 7. Accordingly, under the amended version of MCL 769.1k(1)(b)(*iii*), the trial court did not err when it imposed court costs in defendant's case even though the statutes underlying defendant's convictions, i.e., MCL 750.529, MCL 750.224f, MCL 333.7403(2)(a)(v), MCL 257.602a(3)(a), and MCL 750.227b, do not separately authorize the imposition of court costs. *Konopka*, ___ Mich App at ___; slip op at 7.

However, pursuant to the amended version of MCL 769.1k(1)(b)(*iii*), the court costs must be "reasonably related to the actual costs incurred by the trial court." At the sentencing hearing, the trial court did not establish a factual basis for its imposition of $600 in court costs. "[W]ithout a factual basis for the costs imposed, [this Court] cannot determine whether the costs imposed were reasonably related to the actual costs." *Id*. at ___; slip op at 8. Thus, we remand this case "to the trial court for further proceedings to establish a factual basis for the . . . costs imposed, under MCL 769.1k(1)(b)(*iii*), or to alter [the amount imposed], if appropriate." *Id*. at ___; slip op at 8.

Affirmed, but remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood