# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL EUGENE HOSECLAW,

        Defendant-Appellant.

UNPUBLISHED
February 28, 2017

No. 328354
Macomb Circuit Court
LC No. 2014-003953-FH

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to commit great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant to 2 to 10 years' imprisonment. Defendant appeals as of right. We affirm.

On July 13, 2014, Keith Kowalske, Michael Cox, and Rob Wilson were in the poker room at the Sunnybrook Golf Course in Sterling Heights. Defendant approached the men and engaged in a verbal altercation with Kowalske. Defendant left the poker room, and Kowalske left the poker room after defendant left. While both men were in the parking lot of the golf course, defendant hit Kowalske in the head with a carpet kicker. Defendant contended at trial that he acted in self-defense.

## I. PRODUCTION OF WITNESSES

Defendant first argues that the prosecutor violated MCL 767.40a(5) by failing to provide reasonable assistance to locate and serve process on Nicole Yelp.[1] Defendant further argues that the trial court erred by finding that Yelp was not properly served with a subpoena and by refusing to issue a bench warrant for Yelp's arrest. We disagree.

---

[1] We note that although defendant mentions Wilson as one of the witnesses who did not testify at trial, defendant's arguments regarding MCL 767.40a(5) and the trial court's refusal to issue a bench warrant are limited to Yelp.

-1-

Following a lengthy discussion about the production of Yelp and Wilson and their expected testimony, defense counsel stated that she waived their presence because their testimony would be cumulative. Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citation and quotation marks omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id.* (citation and quotation marks omitted). By stating that she waived the presence of Yelp and Wilson, defense counsel expressly approved the act of continuing trial without the testimony of Yelp and Wilson. Accordingly, defense counsel waived the issues whether the prosecutor violated MCL 767.40a(5) and whether the trial court erred by refusing to issue a bench warrant for Yelp's arrest. However, even if the issues were not waived, defendant is not entitled to any relief.

In 1986, when MCL 767.40a was amended, the prosecution's duty regarding production of witnesses was altered. *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003). Before the 1986 amendment, the statute required the prosecution "to list all res gestae witnesses on the information and to produce them at trial." *Id.* The 1986 amendment replaced the prosecution's duty to produce all res gestae witnesses with "an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request." *People v Burwick*, 450 Mich 281, 289; 537 NW2d 813 (1995). Pertinently, the prosecution "shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness." MCL 767.40a(5).

At a pretrial hearing, defense counsel asked for assistance in subpoenaing the witnesses she intended to call at trial. The trial court ordered the prosecutor to provide defense counsel with the contact information that he had for those witnesses. The court also told defense counsel that it would approve any request for reimbursement of fees that she incurred in subpoenaing the witnesses. Defendant acknowledges that defense counsel sent a subpoena to Yelp and that Yelp received it. Despite this acknowledgment, defendant claims that the prosecutor did not provide reasonable assistance as required by MCL 767.40a(5) because Yelp, as the prosecutor knew before trial, had no intention of complying with the subpoena, and defense counsel needed assistance to get Yelp to trial. Thus, defendant argues that MCL 767.40a(5) requires a prosecutor to give assistance to ensure that a defense witness, upon receiving a subpoena, complies with the subpoena and appears in court.

The goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010). Our analysis begins with the language of the statute. *Id.* If the language is unambiguous, the Legislature is presumed to have intended the meaning clearly expressed, and the statute must be enforced as written. *Id.* "Nothing will be read into a clear and unambiguous statute that is not within the manifest intent of the Legislature as derived from the language of the statute itself." *Id.* at 210. Pursuant to MCL 767.40a(5), a prosecutor "shall provide to the defendant, or defense counsel, upon request, *reasonable assistance*, including investigative assistance, *as may be necessary to locate and serve process upon a witness*." (Emphasis added.) MCL 767.40a(5) requires a prosecutor to provide reasonable assistance that is necessary to locate and serve process on a witness. The statute does not speak of any assistance that a prosecutor must give after a witness has been served with a subpoena. Accordingly, to hold that a prosecutor must provide assistance

in obtaining the appearance of a subpoenaed witness, who has expressed an intention not to comply with a subpoena, would read into MCL 767.40a(5) a requirement that is not within the manifest intent of the Legislature as derived from the language of the statute. Accordingly, we reject defendant's argument that the prosecutor failed to provide reasonable assistance as required by MCL 767.40a(5).

As indicated, Yelp did not comply with the subpoena that she received from defense counsel. The failure to comply with a subpoena served in accordance with MCR 2.506 may be considered a contempt of court. MCR 2.506(E)(1). MCR 2.506(G) provides, in pertinent part:

> (1) A subpoena may be served anywhere in Michigan in the manner provided by MCR 2.105. . . .

> (2) A subpoena may also be served by mailing to a witness a copy of the subpoena and a postage-paid card acknowledging service and addressed to the party requesting service. The fees for attendance and mileage provided by law are to be given to the witness after the witness appears at the court, and the acknowledgment card must so indicate. If the card is not returned, the subpoena must be served in the manner provided in subrule (G)(1).

MCR 2.105(A) involves service of process with regard to the summons and complaint in a civil case and provides that process may be served on an individual by

> (1) delivering a summons and a copy of the complaint to the defendant personally; or

> (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. A copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2).

Defense counsel indicated at trial that she mailed the subpoena to Yelp. Yelp was not served by personal service or through registered or certified mail. There is no indication that a postage-paid card accompanied the subpoena or that the card was returned. However, defendant claims that, because Yelp acknowledged receipt of the subpoena via telephone, Yelp was properly served with the subpoena.

The rules of statutory construction apply to the interpretation of court rules. *Hill v City of Warren*, 276 Mich App 299, 305; 740 NW2d 706 (2007). Thus, in interpreting a court rule, we begin with the language of the rule. *Id*. If the language is unambiguous, " 'the proper role of a court is simply to apply the terms of the [court rule] to the circumstances in a particular case.' " *Id*. (citation omitted). Language in a court rule must be read in the context of the entire rule. See *People v Glass*, 288 Mich App 399, 404; 794 NW2d 49 (2010).

Accordingly, the second sentence in MCR 2.105(A)(2) that "[s]ervice is made when the defendant acknowledges receipt of the mail" cannot be read in isolation. The first sentence of

MCR 2.105(A)(2) provides that process may be served on an individual by "sending a summons and a copy of the complaint by registered or certified mail, return receipt requested." The phrase "the mail" in the second sentence in MCR 2.105(A)(2) clearly refers to the "registered or certified mail" that is mentioned in the first sentence. Thus, when read in context, the second sentence of MCR 2.105(A)(2) provides that service of process is made when the individual acknowledges receipt of the registered or certified mail. It cannot be read for the proposition advanced by defendant that service is made when the individual acknowledges receipt of the mail regardless what manner of mail was used.

Therefore, the trial court did not err by concluding that Yelp was not properly served with a subpoena. Yelp's subpoena was not served in accordance with MCR 2.506. Further, because a person's failure to comply with a subpoena can only be a contempt of court if the subpoena is served in accordance with MCR 2.506, the trial court did not err by refusing to issue a bench warrant for Yelp's arrest. See MCR 2.506(E)(1). Accordingly, defendant's claims that the prosecutor failed to provide reasonable assistance and that the court erred by concluding that Yelp was not properly served with the subpoena are without merit.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel was ineffective for failing to properly subpoena Yelp and Wilson, for failing to request a continuance in order to produce the witnesses, and for waiving production of them at trial. We disagree.

Because defendant did not move for a new trial or an evidentiary hearing, he failed to preserve the issue, and our review of the ineffective assistance of counsel claim is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). In general, the issue whether a defendant received the effective assistance of counsel constitutes a mixed question of fact and law. *Id*. "This Court reviews findings of fact for clear error and questions of law de novo." *Id*.

To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland v Washington*, 466 US 668, 697; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Based on this rule, we need not analyze whether defense counsel's performance was deficient. The prejudice that defendant claims is that the jury did not hear the testimony of Yelp and Wilson. According to the statements that Yelp and Wilson gave to the police, neither saw how the fight between defendant and Kowalske started. Yelp did not see the fight until after Michael Cox was involved, and Wilson did not see any of it. Because Yelp and Wilson could not have testified regarding how the fight started, the absence of testimony from Yelp and Wilson at trial does not

undermine confidence in the outcome of defendant's trial. Thus, there is not a reasonable probability that, but for defense counsel's conduct, the result of the trial would have been different. Defendant was not denied the effective assistance of counsel.

Defendant next argues that he is entitled to specific performance of an original plea offer to plead guilty to aggravated assault, MCL 750.81a. He contends that he denied the offer on the basis of defense counsel's incorrect advice that defense witnesses would testify in support of his claim of self-defense. We disagree. Defendant failed to preserve this issue for appellate review by filing a motion for a new trial or an evidentiary hearing, and our review of this ineffective assistance of counsel claim is limited to mistakes apparent from the record. See *Heft*, 299 Mich App at 80.

A defendant is entitled to the effective assistance of counsel during the plea-bargaining process. *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). A defendant who claims that he was denied the effective assistance of counsel during the plea-bargaining process must meet the familiar two-pronged standard for ineffective assistance of counsel claims: deficient performance and prejudice. *Id.* at 592. To show prejudice, the defendant must demonstrate that the outcome of the plea process would have been different had counsel provided competent advice. *Id.* A defendant has the burden to prove the factual predicate for a claim of ineffective assistance of counsel. *Id.*

At a pretrial hearing, defendant's attorney informed the trial court that the prosecutor had given defendant an offer to plead to misdemeanor aggravated assault, that he was willing to plead, and that the offer was no longer available. The prosecutor responded that he did not believe that an offer for aggravated assault was ever formally made. At a subsequent pretrial hearing, the prosecutor stated that defendant's claim that the prosecutor made an offer to plead to aggravated assault was deemed not to be true. The prosecutor then made an offer for defendant to plead guilty to aggravated assault, but defendant would have to pay full restitution up front. However, defendant chose to go to trial. At a subsequent pretrial hearing, the prosecutor indicated that the prosecution had made two separate offers. The first offer was for aggravated assault with restitution of $3,000 to be paid at sentencing, and the second offer was for defendant to plead guilty as charged with the stipulation that if defendant paid the $3,000 in restitution during his term of probation, he could withdraw his plea and plead to the reduced charge of aggravated assault. However, defendant decided to proceed with trial. At trial, there was a discussion regarding defendant's option to plead guilty to assault with intent to commit great bodily harm less than murder pursuant to a *Cobbs*[2] agreement, but defendant ultimately decided to proceed with trial.

The record does not establish the factual predicate for defendant's claim, i.e., that he rejected an offer to plead guilty to aggravated assault without the restitution requirement. Even if defendant had received an earlier offer to plead guilty to aggravated assault and defendant rejected the offer, the record does not establish that defendant rejected the offer based on advice

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

from defense counsel that defense witnesses could testify in support of his self-defense claim. The record is silent regarding any advice that defense counsel gave defendant regarding any plea offer. Thus, there is no mistake by defense counsel that is apparent from the record.

Defendant claims that, even if he is not entitled to specific performance of the offer to plead guilty to aggravated assault, he should be allowed to plead guilty to assault with intent to commit great bodily harm less than murder pursuant to the *Cobbs* agreement that was offered during trial. However, defendant's rejection of the *Cobbs* agreement was not the result of any advice from defense counsel that defense witnesses could testify in support of his self-defense claim. When he rejected the *Cobbs* agreement, defendant knew that Yelp and Wilson would not be testifying.

Defendant suggests that defense counsel's performance fell below an objective standard of reasonableness when counsel moved to withdraw after defendant indicated that he wanted to plead pursuant to the *Cobbs* agreement. However, even assuming that defense counsel's performance in moving to withdraw was deficient, there is no connection between the motion to withdraw and defendant's subsequent decision to reject the *Cobbs* agreement. The trial court denied defense counsel's motion to withdraw. The trial court then asked defendant, for a final time, what he wanted to do, and it explained to defendant the two options available to him. After hearing the options, and knowing that he would be represented by counsel, defendant chose to testify. Under these circumstances, defendant has not shown any prejudice from defense counsel's alleged deficient performance in moving to withdraw. Defendant is not entitled to specific performance of any plea offer.

## III. DISCOVERY

Next, defendant argues that the trial court erred by refusing to order the prosecutor to produce Kowalske's medical records. We disagree.

We review a trial court's decisions regarding discovery for an abuse of discretion. *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Due process claims, such as an alleged *Brady*[3] violation, are reviewed de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

" 'There is no general constitutional right to discovery in a criminal case . . . .' " *People v Stanaway*, 446 Mich 643, 664; 521 NW2d 557 (1994) (citation omitted). However, due process requires the prosecution to provide the defendant with evidence in its possession that is favorable to the defendant and material to guilt or punishment. *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014). The three elements of a *Brady* violation are "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is

---

[3] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

material." *Id*. at 155. Because the prosecutor did not possess Kowalske's medical records, *Brady* did not require the prosecutor to provide the medical records to defendant.

MCR 6.201 governs discovery in criminal cases. *Phillips*, 468 Mich at 589. The court rule mandates that the prosecution provide certain discovery to the defendant upon the defendant's request. See MCR 6.201(A) and (B). If a defendant seeks discovery of material that is not required to be disclosed, the defendant must show good cause before the trial court may order the requested discovery. MCR 6.201(I); *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 448; 722 NW2d 254 (2006). Kowalske's medical records do not fall within the mandated disclosure provisions.

The trial court concluded that the prosecutor was "under no obligation to produce" Kowalske's medical records. It specifically told defendant that he was "free to pursue any discovery directly" that he felt was appropriate. Thus, the trial court did not rule that defendant was not entitled to discover Kowalske's medical records. Defendant remained free to subpoena the hospital for Kowalske's medical records, which defendant did not do. Essentially, the trial court required defendant to seek production of the medical records from the entity that possessed them. Because defendant has not provided any caselaw indicating that the prosecution is required to obtain information from a third party that it is not required by law to provide the defendant, we conclude that the trial court did not abuse its discretion by refusing to require the prosecutor to produce Kowalske's medical records. See *Phillips*, 468 Mich at 587.

## IV. VIDEOTAPE RECORDING

Defendant argues that the trial court erred when it refused to provide the jury with the surveillance video of the inside of the poker room. We disagree.

During trial, a videotape recording of the inside of the poker room before the incident was shown to the jury. The record indicates that there were ongoing technical issues with the videotape recording. During deliberations, the jury sent a note to the trial court, asking what alternative it had in reaching a unanimous verdict when the video was not operating. The trial court instructed the jury that it was to rely on its collective memory regarding the surveillance video and to continue its deliberations.

In support of his argument, defendant relies on federal caselaw indicating that a jury is generally entitled to examine exhibits admitted into evidence. According to defendant, there was no reason that justified excluding the video of the poker room from the jury room. Defendant's argument miscomprehends what happened. The present case does not involve a situation where the trial court, upon receiving a request from the jury to view the video of the poker room, chose to exclude the video from the jury room. The trial court's statements, during its discussion with the prosecutor and defense counsel that followed closing instructions, clearly indicated that it would allow the jury to view the video of the poker room if the jury so asked. The trial court's statements, along with the jury's question and the trial court's instruction in response, establish that the trial court provided the jury with the video, but the jury was unable to view it because the video was not operating. Thus, the relevant inquiry is whether the trial court properly instructed the jury to rely on its collective memory regarding the video and to continue its deliberations. Because defendant makes no argument regarding the trial court's instruction, defendant has

-7-

abandoned his claim for relief. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

## V.  PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor committed misconduct when the prosecutor in his rebuttal argument stated that defense counsel was at fault for two witnesses not appearing at trial because defense counsel failed to properly subpoena them.  Because defendant did not object to the remark, the claim of prosecutorial misconduct is unpreserved, see *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), and we review it for plain error affecting defendant's substantial rights, *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).[4]

The test for prosecutorial misconduct is whether the prosecutor's conduct denied the defendant a fair and impartial trial.  *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).  We examine instances of prosecutorial misconduct on a case-by-case basis and in context.  *Id*. at 62-63.  A prosecutor denies a defendant a fair trial if he or she makes a remark that infects the trial with unfairness to the extent that the defendant's conviction constitutes a denial of due process.  *Id*. at 62.

In his rebuttal argument, the prosecutor stated that two witnesses did not appear at trial because they were not properly subpoenaed, and indicated that this was defense counsel's fault.  Although a prosecutor's remarks must be considered in light of defense counsel's comments and "[a]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument," *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001) (citation and quotation marks omitted), the prosecutor was not responding to any comment made by defense counsel.  Defense counsel, in her closing argument, did not mention anything about the two witnesses not appearing at trial.  "If the defendant makes an argument, the plaintiff or the prosecutor may offer a rebuttal limited to the issues raised in the defendant's argument."  MCR 2.513(L).  Because defense counsel did not raise any issue regarding missing witnesses in her closing argument, it was improper for the prosecutor to make any argument in his rebuttal about the missing witnesses and who was to blame for their absence at trial.

However, the prosecutor's improper comment did not affect defendant's substantial rights.  We first conclude that the error was not prejudicial because the jury heard little regarding the two witnesses and their relevance to the case during trial.  Thus, the prosecutor's comment would not have made sense to the jury and would not have affected its decision.  In addition,

---

[4] In his brief on appeal, defendant also claims that the prosecutor committed misconduct by berating defense counsel for lying about not receiving police reports, for not following correct procedures, and for failing to subpoena witnesses.  However, because defendant did not provide any citation to the record to support his argument, the argument is not properly before us and we decline to consider it.  See *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

after closing arguments, the jury was instructed that it had to decide the case based only on the evidence, which included the sworn testimony of witnesses, the admitted exhibits, and anything else it was told was evidence. The trial court specifically instructed the jury that the statements and arguments of the lawyers were not evidence. A jury is presumed to follow its instructions, and instructions are presumed to cure most errors. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Based on the trial court's instructions, the prosecutor's improper remark did not affect the outcome of defendant's trial. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## VI. SENTENCING

Defendant argues that the trial court erred by scoring offense variable (OV) 3. We disagree.

We review a trial court's factual findings in scoring the sentencing guidelines for clear error, and the court's determinations must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error exists when we are left with a definite and firm conviction that an error occurred. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). Whether the facts, as found by the trial court, are adequate to satisfy the scoring conditions is a question of statutory interpretation, which is an issue reviewed de novo. *Hardy*, 494 Mich at 438.

OV 3 addresses physical injury to the victim. MCL 777.33(1). The trial court assigned 25 points for OV 3, but defendant claims that only 10 points should have been assigned. Twenty-five points are to be assessed for OV 3 if "[l]ife threatening or permanent incapacitating injury occurred to a victim," MCL 777.33(1)(c), whereas 10 points are to be assessed if "[b]odily injury requiring medical treatment occurred to a victim," MCL 777.33(1)(d).

Kowalske explained that he went to the hospital the day after the incident. The hospital performed a CT scan of his brain, took x-rays of his shoulders, neck, and eye socket, and put six staples into his head to close the gash he received in the incident. Kowalske testified that since the assault, he has constant headaches, which he described as "[h]orrible, horrible headaches." He also suffers aches in his left eye, and he has nerve damage that causes his head and neck to go numb. His left eye constantly leaks or tears. It leaks whenever he touches it or when he leans to that side. Because he installs hardwood floors, he leans over a lot. The injuries have an effect on his work. Although Kowalske was not receiving treatment at the time of trial because he did not have insurance, he anticipated receiving treatment in the future. Kowalske indicated that he did not suffer from these ailments before July 13, 2014. Based on Kowalske's testimony, we are not left with a definite and firm conviction that the trial court erred by finding that Kowalske suffered permanent incapacitating injury. See *McChester*, 310 Mich App at 358.

Because we affirm the trial court's 25-point score for OV 3, we need not address defendant's final argument that the trial court erred by assigning five points for OV 10. If a trial court errs in scoring the sentencing guidelines and the scoring error affected the minimum sentence range, the defendant is entitled to be resentenced. *People v Biddles*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 326140); slip op at 4. Any error by the trial court in

assigning five points for OV 10 did not affect the minimum sentence range. Therefore, resentencing is not required.

Affirmed.

/s/ Kathleen Jansen
/s/ Michael F. Gadola