*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BERNARD HARVEY WOLF,

Defendant-Appellant.

UNPUBLISHED
August 14, 2025
9:50 AM

No. 366494
Allegan Circuit Court
LC No. 2022-024958-FC

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and MCL 750.520b(2)(b), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). The trial court sentenced defendant to serve 27 to 45 years' imprisonment for the CSC-I conviction and 40 months to 15 years' imprisonment for the CSC-II conviction. We affirm.

## I. BACKGROUND

This case arises out of defendant's repeated sexual assaults of the victim, FB, beginning when she was 8 or 9 years old and lasting until she was about 12 years old. Beginning in 2008, defendant and FB's grandmother became romantically involved and eventually moved in together. Between 2009 and 2012, FB, her mother, and her siblings lived with defendant and FB's grandmother. According to FB, during this time, defendant repeatedly placed his hands on her breasts and vagina when they were alone in defendant's home or pickup truck. The abuse ended when FB and her family moved to a different home.

FB disclosed the abuse to her mother in 2020. Defendant's first trial ended in a mistrial because the jury was unable to reach a verdict. At his second trial in March 2023, LH, who was a daughter of one of defendant's previous romantic partners, testified that defendant sexually assaulted her when she was younger and living with him. The jury convicted defendant as described, and this appeal followed.

## II. USE OF THE WORD "VICTIM" DURING VOIR DIRE

When making statements or asking jurors questions during voir dire, the prosecutor in this case repeatedly used the word "victim" or "victims" to refer to FB or complainants in CSC cases generally. Defendant argues that this amounted to misconduct and violated defendant's constitutional rights to due process and a fair trial. He also argues that his trial counsel's failure to object to the use of the word "victim" denied him the right to the effective assistance of counsel.

Defendant concedes that he did not object to the prosecutor's use of the word "victim" in the trial court, so this issue is not preserved. See *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022); *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). We review unpreserved constitutional claims and claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 16-17; *People v Jarrell*, 344 Mich App 464, 481; 1 NW3d 359, 370 (2022). Unpreserved claims of ineffective assistance of counsel are reviewed for mistakes apparent on the record. *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021).

Defendant's arguments are controlled by this Court's recent decision in *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978). That case, like this one, involved charges under MCL 750.520b and MCL 750.520c, and the prosecution in *Wisniewski* repeatedly referred to the complainants as "the victim[s]" during voir dire. *Id*. at ___; slip op at 1, 17. The defendant argued that the prosecution's use of this word amounted to prosecutorial misconduct and deprived the defendant of a fair trial. *Id*. at ___; slip op at 16-17. This Court held that the trial court did not err by permitting the prosecution to refer to the complainants as "victims" because "the applicable legislation" established that the complainant in a CSC case is the "victim." *Id*. at ___; slip op at 17-18, citing MCL 750.520(s). This Court further held that the prosecution's use of the word "victim" did not deprive defendant of his right to a fair trial because the jury would have understood that the reason for the criminal proceedings was "that the prosecution believes that the complainant actually is 'the victim,' " so the prosecution's use of the word was not suggesting "anything to the jury of which it was not already aware." *Wisniewski*, ___ Mich App at ___; slip op at 18.

The law today is the same as it was when *Wisniewski* was decided—under the CSC section of the penal code, "victim" is still defined as the person claiming that he or she was sexually assaulted MCL 750.520a(s). So, as in *Wisniewski*, "because the prosecution in this case used the language to refer to the complainants that has been codified by our Legislature, the trial court did not plainly err by allowing the prosecution to use that language." *Wisniewski*, ___ Mich App at ___; slip op at 18. Defendant here was likewise not deprived of a fair trial because, as in *Wisniewski*, "a reasonable juror obviously would understand that the prosecution's position is that the complainant in a CSC trial is a 'victim.' " *Id*. at ___; slip op at 19. Lastly, defendant's counsel was not ineffective for failing to object to the prosecution's use of the word "victim" because failing to advance a futile objection does not constitute ineffective assistance. See *People v Jarrell*, 344 Mich App 464, 481; 1 NW3d 359 (2022). Accordingly, none of defendant's arguments related to the prosecution's use of the word "victim" during voir dire warrant appellate relief.

## III. EVIDENCE OF SEXUAL ASSAULTS ON ANOTHER MINOR

Defendant next argues that the trial court erred by admitting the other-acts testimony of LH under MCL 768.27a and MRE 404(b).

The prosecutor filed a notice of intent to introduce LH's testimony under MCL 768.27a and simultaneously moved to admit the evidence under MRE 404(b). Defendant objected, and the trial court ruled that the evidence was admissible under both the statute and the evidentiary rule.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Hoskins*, 342 Mich App 194, 200; 993 NW2d 48 (2022). "A court abuses its discretion when its decision is 'outside the range of principled outcomes.' " *Id*., quoting *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

Evidence intended solely to demonstrate a defendant's propensity for certain conduct is generally barred by MRE 404(b). See *People v Berklund*, ___ Mich App ___; ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 7. But in *People v Watkins*, 491 Mich 450, 471; 818 NW2d 296 (2012), our Supreme Court ruled that the Legislature in MCL 768.27a intended to allow certain types of propensity evidence to be admissible despite MRE 404(b)'s bar. MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." The parties agree that LH's testimony fits within the statute, but defendant maintains that the evidence should have been excluded under MRE 403.

In *Watkins*, our Supreme Court clarified that other-acts evidence admissible under MCL 768.27a remains subject to MRE 403. *Watkins*, 491 Mich at 486. MRE 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[1] Evidence is unfairly prejudicial if there is a danger that it will be given undue weight by the jury or will bring into focus improper considerations like bias or sympathy. *Berklund*, ___ Mich Ap at ___; slip op at 9; *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

"Propensity evidence is prejudicial by nature, and it is precisely the danger of prejudice that underlies the ban on propensity evidence in MRE 404(b)." *Watkins*, 491 Mich at 486. Yet, in *Watkins*, our Supreme Court recognized that the Legislature's intent in enacting MCL 768.27a was "to allow juries to consider evidence of other acts the defendant committed to show the defendant's character and propensity to commit the charged crime." *Watkins*, 491 Mich at 486. To give effect to that intent, *Watkins* held that courts considering whether MRE 403 should bar evidence admissible under MCL 768.27a "must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 486-487. The

---

[1] Our rules of evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). This opinion relies on the rules of evidence that were in effect at the time of defendant's trial, although the substance of MRE 403 was essentially unchanged.

-3-

Court then provided the following nonexhaustive list of factors that a court may consider when deciding whether evidence admissible under MCL 768.27a should be excluded by MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

The trial court here considered these factors and others, and ultimately ruled that the probative value of LH's testimony was not substantially outweighed by the risk of unfair prejudice. This decision did not amount to an abuse of discretion.

Defendant's assaults of LH and FB were undoubtedly similar—in each instance, both were young relatives of defendant's romantic partners who lived with defendant; defendant assaulted both LH and FB when they were between about 7 and 12 years old; both women testified that defendant would assault them repeatedly, at every opportunity he could get them alone in his home; and both women testified that defendant would fondle their breasts and reach into their shirt and pants when they were alone with defendant as he drove his pickup truck. The evidence further demonstrated that the sexual assaults were similar not only in their locations and frequency but also in the way in which they were perpetrated—both LH and FB described defendant primarily touching and pinching their breasts, and placing his hand inside their underwear and fondling or running his fingers between the labial folds of their vaginas. In making its decision, the court acknowledged that it was considering the dissimilarity between the other acts and defendant's alleged conduct, the presence of intervening acts, and, in particular, the temporal proximity between the other acts and defendant's alleged conduct. The court noted that the conduct that LH was describing took place 30 years ago, and 20 years before defendant assaulted FB. But the court rightly reasoned that a lapse in time alone does not preclude the admission of other-acts evidence when the other acts bear significant similarities to the charged offenses. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016). And the court ultimately concluded that the probative value of the other-acts evidence outweighed the danger of any unfair prejudice because the other-acts evidence was highly similar to the charged conduct, which supported a propensity inference that weighed in favor of the evidence's admissibility. The court accordingly declined to exclude the other-acts evidence under MRE 403.

On appeal, defendant argues that this was error because LH testified that sometimes defendant assaulted her at night and had her remove her clothes, and FB did not testify to anything similar. While it is true that there were some differences between the way LH and FB described the way in which defendant assaulted them, defendant fails to grapple with how the location, frequency, and manner of the assaults described by the witnesses were similar. In other words, defendant highlights some differences between the described assaults without explaining how those differences detract from the trial court's reasoning that the other-acts evidence was admissible because the assaults described by LH were highly similar to the ones FB described. Defendant also stresses the gap in time between when he assaulted LH and when he assaulted FB, but the trial court recognized that gap in time and concluded that it did not warrant excluding the

other-acts evidence under MRE 403. Defendant fails to explain how this decision amounted to an abuse of discretion.

Defendant alternatively argues "that the jury would be [so] extremely alarmed" to learn that defendant "committed similar acts against another girl in the same age range in the past" that it would be "impossible" for the jury "to set aside its disturbance" and fairly weigh the evidence. But propensity evidence is highly prejudicial—and thus generally inadmissible—*because* it is so probative. See *Berklund*, ___ Mich App at ___; slip op at 7. The very intent of MCL 768.27a is to allow juries to hear "evidence of other acts the defendant committed to show the defendant's character and propensity to commit the charged crime." *Watkins*, 491 Mich at 486. See also *id.* at 476 (explaining that MCL 768.27a "reflects a substantive legislative determination that juries should be privy to a defendant's behavioral history in cases charging the defendant with sexual misconduct against a minor"). The trial court did not err by permitting the jury to hear propensity evidence as permitted by MCL 768.27a, especially considering that the trial court instructed the jury about how to properly consider this evidence.

Defendant lastly argues that MCL 768.27a is unfair to all criminal defendants accused of CSC and violates their constitutional rights. This Court rejected such an argument in *People v Muniz*, 343 Mich App 437, 460-461; 997 NW2d 325 (2022). For the reasons stated there, defendant's argument is without merit.[2]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In a Standard 4 brief and in a motion to remand for an evidentiary hearing that was denied without prejudice,[3] defendant argues that his trial counsel was ineffective in a variety of ways. While defendant's arguments are not clearly demarcated, and many of his arguments overlap, we think that his contentions can be divvied up into four distinct arguments. We address each of those arguments in turn.

"To establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Haynes*, 338 Mich App at 429 (quotation marks and citation omitted). Effective assistance is presumed, and it is the defendant's burden to prove otherwise. *Id.*

### A. PLEA NEGOTIATIONS

Defendant first contends that his trial counsel was ineffective because he did not tell defendant about the prosecution's plea offer; that his trial counsel unilaterally rejected the plea and that "defendant Wolf never told the court . . . that he rejected any kind of plea"; that his trial

---

[2] Because the other-acts evidence was admissible under MCL 768.27a, we decline to address defendant's argument that the trial court erred by also admitting the evidence under MRE 404(b).

[3] *People v Wolf*, unpublished order of the Court of Appeals, issued February 14, 2025 (Docket No. 366494).

counsel did not inform defendant that he would be sentenced to a minimum term of 25 years' imprisonment if convicted; and that defendant's trial counsel, rather than defendant, insisted on going to trial. This entire argument is undermined by the following discussion that took place on the record before defendant's trial:

> *The Court*: Okay. Mr. Antkoviak you wanted to put something else on the record as well.
>
> *Mr. Antkoviak* [defense counsel]: Yes. Your Honor typically before starting a trial I find it prudent to at least state for the record that there were plea negotiations prior to the time that the trial started. In this particular case because it's a re-trial I understood in speaking with my client that he wished to proceed to trial again after the last hung verdict. There really were a lot of settlement discussions between the last trial and today's date, however late Friday afternoon Ms. Kasson and I met, we discussed the possibility, should there be an interest on the part of my client in settling the matter, and we discussed the possibility of two 1st degree CSC 1 charges without any mandatory/minimum relative to this case and another case that is pending in Circuit Court involving a separate party (inaudible). I discussed that with my client and the way Ms. Kasson and I left it was that if Mr. Wolf is interested in entering into negotiations in good faith then she would take those two to the victims and discuss the offer. Mr. Wolf and I spent quite a bit of time on Friday discussing various options, and at the conclusion of all that it's my understanding that he wished to proceed to trial and did not wish to tender any sort of offer or indication of offer at that time. So, is that accurate Mr. Wolf?
>
> *Mr. Wolf*: Yes.
>
> *The Court*: And that's still your intention to go to trial today?
>
> *Mr. Wolf*: Yes.
>
> *The Court*: With all the charging and possible penalties that we discussed, including a 25 year mandatory/minimum.
>
> *Mr. Wolf*: We had talked about it but every offer that came back was basically a lifetime offer anyways.
>
> *Mr. Antkoviak*: So you're still wishing to proceed to trial.
>
> *Mr. Wolf*: Yes.
>
> *Mr. Antkoviak*: Thank you.

The foregoing plainly demonstrates that defendant's trial counsel told defendant about the prosecution's plea offer; that defendant, not his counsel, rejected the offer, and that defendant told this to the trial court; that defendant was informed about the mandatory-minimum sentence if he

was convicted; and that it was defendant's choice to proceed to trial. Defendant has therefore failed to establish that his trial counsel was ineffective during plea negotiations.

## B. CONFLICT OF INTEREST

Defendant next argues that his trial counsel was ineffective because his upcoming appointment to serve as a judge on the Allegan Circuit Court created a conflict of interest that amounted to ineffective assistance of counsel.

Counsel has a duty to avoid conflicts of interest. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). But a conflict of interest will not be presumed or implied; the defendant must instead prove "that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *People v Smith*, 456 Mich 543, 557; 581 NW2d 654 (1998) (quotation marks and citation omitted).

Defendant is correct that his trial counsel began serving as a circuit court judge five months after defendant's trial, and that, as a result this appointment, the prosecutor would appear in defendant's trial counsel's courtroom (assuming that the prosecutor was still practicing). But defendant fails to explain how either of these facts created a conflict of interest with his trial counsel's representation of defendant several months earlier. Because it is not this Court's role to discover and rationalize a party's claim of error, defendant's failure to adequately explain his argument amounts to abandonment. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). This claim therefore does not warrant relief.

## C. POLYGRAPH EXAMINATION

Defendant also argues that his trial counsel provided ineffective assistance by recommending that defendant not take a polygraph test despite defendant's willingness to do so. Assuming for the sake of argument that it was objectively unreasonable for counsel to recommend that defendant not take a polygraph, and further assuming that defendant would have passed a polygraph test, defendant cannot establish prejudice because polygraph-test results are inadmissible in criminal trials. See *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

## D. FAILURE TO PRESENT EVIDENCE

Defendant lastly contends that his trial counsel was ineffective for failing to present (1) expert testimony, (2) certain lay witnesses, and (3) photos and diagrams depicting the inside of defendant's house and truck, i.e., the locations where the sexual assaults occurred.

Decisions about what evidence to present, including which witnesses to call, are generally matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Trial counsel has wide discretion when it comes to matters of trial strategy "because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). For that reason, appellate courts will not second guess trial counsel on matters of strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). But any strategic decision must be, in fact, sound, and appellate courts must not insulate trial counsel's unreasonable

performance by calling it "strategy." *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015). That said, it is still the defendant's burden to overcome the presumption that trial counsel's performance was reasonable. *Haynes*, 338 Mich App at 429.

Turning to defendant's arguments, he first contends that his trial counsel was ineffective for failing to consult with an expert witness who could have testified that "the multiple interviews" of FB "tainted" her memories, and could have also testified about "the bandwagon effect." To sustain an ineffective-assistance claim premised on the failure to call an expert witness, the defendant must offer proof that an expert would have testified favorably to the defendant's defense. See *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Here, defendant "offers no proof that an expert witness would have testified favorably if called" in his defense, so he "has not established the factual predicate for his claim." *Id*. We cannot conclude that there is even a possibility that defendant's trial counsel performed deficiently by failing to consult an expert witness without some indication that doing so would have been beneficial to defendant's defense. It is defendant's burden to establish that his trial counsel's performance was objectively unreasonable, and he has failed to carry that burden here.

Defendant next contends that his trial counsel was ineffective for failing to call certain lay witnesses despite the witnesses being included on defendant's witness list. Defendant identifies four such witnesses in an affidavit attached to his Standard 4 brief, but he does not explain how their testimonies would have benefitted defendant's defense—he merely states that he wanted these witnesses to testify at his trial. Without some explanation of how these witnesses would have aided defendant's defense, there is no basis for concluding that it may have been objectively unreasonable for defendant's trial counsel to not call these witnesses.

In his motion to remand, defendant identifies some different witnesses and contends that "[t]hese witnesses will testify that [defendant] did not have any or little opportunity to be alone with the victims." But witnesses at defendant's trial—including defendant, defendant's son, and Mark Burmania—already provided this testimony; these witnesses said that they had never or hardly ever seen defendant alone with either FB or LH. Defendant does not explain what the uncalled witnesses would have said that these witnesses did not already say, nor does he explain how counsel's decision to not present cumulative evidence was objectively unreasonable. Indeed, choosing which witnesses to present certain evidence through—and concomitantly choosing not to present redundant evidence through multiple witnesses—falls squarely in the realm of trial strategy, and this Court will not second-guess trial counsel on matters of strategy. *Rockey*, 237 Mich App at 76.

Turning to trial counsel's failure to present photos and diagrams of the inside of defendant's house and truck, defendant does not mention this argument in his Standard 4 brief, but he does mention the photos and diagram in the affidavit attached to that brief. There, defendant attests that he provided diagrams and photos of the inside of his truck and house to his trial counsel, but his trial counsel never used this evidence. Defendant never explains what the photos and diagrams would have shown, however—he merely attests that "[i]t would have been nice for the jury to see the truck and the house interiors."

In his motion for remand, defendant develops this argument slightly further, alleging that this evidence would have shown "the considerable difficulty or unlikelihood of the criminal sexual

conduct occurring in the truck, and in the house." But during defendant's trial, he testified about the layout of his truck and explained that, to reach the passenger side from the driver's side, "[y]ou would have to undo your seat belt and lean very far to reach across" due to the center console, and that "you could only reach the opposite side of the console" from the driver's seat. Defendant also described the layout of his house at length, and testified that it was too small for the number of people living there while FB and her family stayed with defendant. Similarly, defendant's son testified that "[i]t's a very small house" and anyone in there is "able to see everybody in it." Then, in closing, defendant's trial counsel emphasized the fact that, despite how cramped defendant's home was with FB and her family living there, no one observed any conduct between defendant and FB that was suggestive of abuse.

It is thus apparent from the record that defendant's trial counsel established the layout of defendant's house and truck through testimony. Defendant also effectively testified that, given the layout of his truck, he would not have been able to sexually assault FB there, and his counsel argued that, given the layout of defendant's home and the number of people living there at the time, it was unlikely that he would have been able to sexually assault FB without anyone knowing. On this record, it is apparent that defendant's trial counsel made a strategic decision to introduce evidence about the layout of defendant's home and truck through testimony instead of through photos and diagrams, and defendant has not explained why this decision was objectively unreasonable. Indeed, it appears that this was a matter of trial strategy, and this Court will not second guess trial counsel on matters of strategy. *Id*. We accordingly reject defendant's argument that his trial counsel provided ineffective assistance by failing to show the jury photos and diagrams of the inside of defendant's house and truck.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace